# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COREY MITCHELL,<br><br>    Plaintiff,<br><br>    v.<br><br>CHAVEZ, et al.,<br><br>    Defendants. | Case No. 1:13-cv-01324-DAD-EPG-PC<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANT CHAVEZ'S MOTION FOR SUMMARY JUDGMENT BE DENIED<br>(ECF No. 37)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY DAYS |

    Plaintiff Corey Mitchell, an inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR") has alleged a claim under the Eighth Amendment against Defendant Correctional Officer ("C/O") Chavez and Defendant Sergeant Sheldon for failure to protect. Plaintiff alleges in his second amended complaint that on September 5, 2011, Defendants Chavez and Sheldon ignored Plaintiff's concerns regarding his safety and directed Plaintiff to accept a cellmate, who thereafter stabbed Plaintiff in the chest.

    Defendant Chavez has moved for summary judgment. He claims that he was not deliberately indifferent to Plaintiff's safety and he is entitled to qualified immunity. The Court finds that Defendant Chavez has not presented undisputed evidence that he was not subjectively aware of a serious risk to Plaintiff's safety and that he took reasonable steps to ensure Plaintiff's safety. While the ultimate factfinder may very well find that Defendant Chavez was not deliberately indifferent to Plaintiff's safety, the Court finds that it cannot come to that conclusion

drawing all inferences in favor of Plaintiff based on the evidence presented. Summary judgment should thus be denied.

**I.**

**BACKGROUND**

Plaintiff filed his second amended complaint in this Court on July 14, 2014. (ECF No. 11). In pertinent part, Plaintiff alleges that he was attacked by members of the 2-5 ("2-5" or "Two-Five") gang at Kern Valley State Prison. Plaintiff was hospitalized and suffered a broken hand, a broken jaw, and deep bruising and lacerations from being kicked and dragged along a concrete surface. Plaintiff filed an administrative grievance, requesting that prison officials protect him from 2-5 gang members. Plaintiff alleges that the grievance was denied on technical grounds.

Plaintiff alleges that four days after he received the rejection of his emergency appeal, he was approached by Defendants Chavez and Sheldon. Plaintiff was housed in the Administrative Segregation Unit ("ASU"). Plaintiff was told that he was going to get a cellmate. Plaintiff alleges that he advised Defendants Chavez and Sheldon that he had serious enemy concerns in the ASU unit. Two of the 2-5 gang members that attacked him on the yard were housed in the ASU, and they were telling the other gang members to kill Plaintiff on sight. Plaintiff alleges that Defendants Chavez and Sheldon were indifferent to his concerns, directing Plaintiff to either take a cellmate or face disciplinary charges and the loss of his property. Plaintiff alleges that inmate Baylor, the prospective cellmate who was being forced on him, was clearly a 2-5 gang member, as "he had a large tattoo on his lower face area, a large '2' on the right side of his chin and a large '5' on the left side of his chin—it was impossible to miss."

Baylor was moved into Plaintiff's cell, and Plaintiff alleges that approximately thirty to forty-five seconds after prison officials left the cell, Baylor began stabbing Plaintiff in the chest with an "ice pick type knife." Plaintiff alleges that as he and Baylor fought, the sound they made was loud. Plaintiff specifically alleges that there was a loud booming noise as they slammed into the cell door. Prison staff "eventually" responded, and both Plaintiff and Baylor were removed from the cell. Plaintiff was hospitalized for treatment for his stab wounds. When Plaintiff

returned from the hospital, he continued to file inmate grievances. Plaintiff's grievance was denied all the way through the third level of review.

Plaintiff was eventually transferred to High Desert State Prison, where he is currently incarcerated. Plaintiff alleges that he suffers from post-traumatic stress disorder, and as a result, "has difficulty functioning around the inmates in the facility, suspecting all as 'potential' 2-5 gang members/associates, and threatening to his life." Plaintiff alleges that he continues to file appeals, which "mysteriously" get lost.

The Court screened Plaintiff's second amended complaint and held that Plaintiff had stated a claim against Defendants Chavez and Sheldon for failure to protect in violation of the Eighth Amendment.[1] (ECF No. 14). The Court found Plaintiff failed to allege cognizable claims against the remaining defendants and granted leave to amend the complaint. Plaintiff elected to proceed with only the Eighth Amendment claim against Defendants Chavez and Sheldon. (ECF No. 15).

Defendant Chavez filed the instant motion for summary judgment on May 5, 2016. (ECF No. 37). Defendant Chavez claims undisputed evidence shows that he "did not perceive a substantial risk to Plaintiff's safety, and that he took steps to ensure Plaintiff's safety before Plaintiff was housed with the prospective cellmate." (ECF No. 37-1 at 1).[2] Plaintiff opposed the motion on May 27, 2016. (ECF No. 43). Defendant filed a reply on June 7, 2016. (ECF No. 46).

## II.

## LEGAL STANDARDS

### A. Summary Judgment

Any party may move for summary judgment, and the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Washington Mutual Inc. v. United States, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of

---

[1] Magistrate Judge Gary Austin presided over the case at that time and issued this decision.
[2] Page numbers refer to the ECF page numbers stamped at the top of the page.

3

1  materials in the record, including but not limited to depositions, documents, declarations, or
2  discovery; or (2) showing that the materials cited do not establish the presence or absence of a
3  genuine dispute or that the opposing party cannot produce admissible evidence to support the
4  fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials
5  in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3);
6  Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord
7  Simmons v. Navajo County, 609 F.3d 1011, 1017 (9th Cir. 2010).

8        Defendant does not bear the burden of proof at trial and in moving for summary
9  judgment, he need only prove an absence of evidence to support Plaintiff's case. Nursing Home
10 Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th
11 Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If Defendant meets his
12 initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the
13 existence of genuine issues for trial." Oracle, 627 F.3d at 387 (citing Celotex, 477 U.S. at 323).
14 This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." Id.
15 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

16       "In judging the evidence at the summary judgment stage, the Court may not make
17 credibility determinations or weigh conflicting evidence," Soremekun v. Thrifty Payless, Inc.,
18 509 F.3d 978, 984 (9th Cir. 2007), and it must draw all inferences in the light most favorable to
19 the nonmoving party and determine whether a genuine issue of material fact precludes entry of
20 judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936,
21 942 (9th Cir. 2011) (citations omitted). The Court determines only whether there is a genuine
22 issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a *pro se*
23 prisoner. See Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) ("We have, therefore, held
24 consistently that courts should construe liberally motion papers and pleadings filed by *pro se*
25 inmates and should avoid applying summary judgment rules strictly.").

26     **B.   Failure to Protect**

27       The Eighth Amendment's prohibition of "cruel and unusual punishments" protects
28 inmates from inhumane conditions of confinement, and requires, *inter alia*, that prison officials

"take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (internal quotation marks omitted) (quoting Hudson v. Palmer, 468 U.S. 517, 526–27 (1984)). In particular, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Farmer, 511 U.S. at 833 (internal quotation marks omitted) (quoting Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558 (1st Cir. 1988)). Thus, "[t]he question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed an inmate to sufficiently substantial 'risk of serious damage to his future health.'" Farmer, 511 U.S. at 843 (quoting Helling v. McKinney, 509 U.S. 25, 35 (1993)). A defendant's action (or inaction) must be a proximate cause of the harm suffered by the plaintiff. Lemire, 726 F.3d at 1074.

To prevail on a claim for a violation of the Eighth Amendment, a plaintiff "must objectively show that he was deprived of something sufficiently serious and make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety." Thomas, 611 F.3d at 1150 (quotation marks and citations omitted). In a failure to protect claim, this objective prong is satisfied by showing that the plaintiff was "incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S at 834; Lemire, 726 F.3d at 1076. The subjective deliberate indifference prong is a two-part inquiry. First, a plaintiff must demonstrate that prison officials were aware of a substantial risk of serious harm to his safety. Second, a plaintiff must demonstrate that there was no reasonable justification for exposing him to the risk. Thomas, 611 F.3d at 1150; Lemire, 726 F.3d at 1078.

**C. Legal Standards for Qualified Immunity**

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id.

In determining whether an officer is entitled to qualified immunity, the Court must decide (1) whether facts alleged or shown by plaintiff make out a violation of constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct. Pearson, 555 U.S. at 232 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. at 236. In resolving these issues, the Court must view the evidence in the light most favorable to the plaintiff and resolve all material factual disputes in favor of the plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

### III.

### EVALUATION OF FACTS IN LIGHT OF LAW

In his motion for summary judgment, Defendant Chavez argues that he was not subjectively aware of, or at worst was merely negligent in not recognizing, a serious risk to Plaintiff's safety because he had no knowledge that Plaintiff was at risk of harm from 2-5 members or that inmate Baylor was affiliated with the 2-5 gang. (ECF No. 37-1 at 6; ECF No. 46 at 4). In support of the motion, Defendant Chavez submits a declaration under penalty of perjury. (ECF No. 37-4). In pertinent part, Defendant Chavez declares that: (1) Plaintiff did not provide a substantial reason why he could not double-cell with Baylor; (2) Defendant Chavez was neither aware of any previous fights between Plaintiff and Baylor nor any reason why they would be incompatible as cellmates; (3) Defendant Chavez did not know why either inmate was housed in the ASU; (4) Defendant Chavez heard Baylor state, in response to Plaintiff's inquiry, that he was not a gang member; (5) Plaintiff did not point out, and Defendant Chavez did not notice, any 2-5 tattoos on Baylor; and (6) Plaintiff signed a Double Cell Review form that stated he was able to house with Baylor. (ECF No. 37-4 at 2–4, 8).

The second amended complaint[3] alleges that Plaintiff "advised defendants C/O

---

[3] When a litigant appears *pro se*, the Court must consider as evidence at summary judgment "all of [his] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [he] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004).

Chavez . . . and Sgt. Sheldon that he had serious enemy concerns in the ASU Unit; that two (2) of the 2-5 gang members who had attacked him on the yard were back in ASU, and that they were telling all the other 2-5 gang members, associates, and sympathizers to kill plaintiff on sight." (ECF No. 11 at 4). Plaintiff also alleges that Defendants Chavez and Sheldon "ordered plaintiff to take a cellmate or face disciplinary charges, and the loss of all his property in the cell with him, including his legal property[.]" (Id.). Plaintiff further alleges that he told Defendants Chavez and Sheldon that Baylor could not be his cellmate "because the guy was clearly a 2-5 gang member, and posed a direct threat to plaintiff's life." (Id.). These allegations are supported by Plaintiff's deposition testimony. Plaintiff testified that "it was abundantly clear to everybody back there that I did not get along with Two-Five. I made a big issue about it." (Mitchell Dep. 23:10–13). Plaintiff testified that when Defendant Chavez presented Baylor as the potential cellmate, Plaintiff told Defendant, "I've been telling you guys I'm fighting with these guys, you trying to force Two-Five member on me, you're nuts." (Id. 30:1–3). Plaintiff also testified that he pointed out Baylor's 2-5 tattoo to Defendant Chavez, who responded that Baylor "was a Two-Five drop out, that that tattoo didn't mean anything." (Id. 31:15–16). Plaintiff further testified that Defendant Sheldon threatened that Plaintiff's property would be taken if Plaintiff did not take a cellmate, and that Defendant Chavez was present when Sheldon made the threat. (Id. 32:22–33:3).

The conflicts between the second amended complaint, Plaintiff's deposition testimony, and Defendant Chavez's declaration present a dispute of fact that cannot be resolved on summary judgment. To do so would require credibility determinations that would be improper at this stage. Plaintiff has presented evidence in the form of deposition testimony that supports the second amended complaint regarding Defendant Chavez's subjective awareness of a serious risk to Plaintiff's safety. Thus, the Court cannot grant Defendant Chavez summary judgment on this ground. See Lemire, 726 F.3d at 1078 (noting that the subjective inquiry is "fact-intensive and typically should not be resolved at the summary judgment stage.").

Defendant Chavez next argues that summary judgment is appropriate because he took reasonable steps to ensure Plaintiff's safety. (ECF No. 37-1 at 10–11). In support, Defendant

7

Chavez declares under penalty of perjury that he granted Plaintiff's request to speak with Defendant Sheldon prior to being housed with another inmate and arranged for Plaintiff and Baylor to speak and assess their compatibility. (ECF No. 37-4 at 2). Defendant Chavez also declares that if Plaintiff had provided a legitimate reason why he could not double-cell, Defendant Chavez would have referred the issue to his supervisors. (Id. at 3). Moreover, Defendant argues that requiring him to do anything more would be unreasonable given that Plaintiff had signed the Double Cell Review form. (ECF No. 37-1 at 11). As discussed above, during his deposition Plaintiff testified that he informed Defendant Chavez of the threat of 2-5 members, pointed out that Baylor had a 2-5 tattoo, and expressed concern about being cellmates with Baylor. Plaintiff also testified that in the presence of Defendant Chavez, Defendant Sheldon threatened to take Plaintiff's property if Plaintiff did not take a cellmate.

Again, the conflicts between Plaintiff's deposition testimony, and Defendant Chavez's declaration present a dispute of fact that cannot be resolved on summary judgment. To do so would require credibility determinations that would be improper at this stage. Plaintiff has presented evidence in the form of deposition testimony supporting his second amended complaint that Defendant Chavez acted unreasonably under the circumstances. Thus, the Court cannot grant Defendant Chavez summary judgment on this ground.

Finally, Defendant Chavez argues that he is entitled to qualified immunity because no constitutional violation occurred and a reasonable officer would have believed that he could rely on a signed Double Cell Review form as evidence that two prospective cellmates did not pose a substantial risk of serious harm to each other. (ECF No. 37-1 at 12). This argument is based on the same analysis as the failure-to-protect claim, *i.e.* that Defendant Chavez was not subjectively aware of a serious risk to Plaintiff's safety because he had no knowledge that Plaintiff was at risk of harm from 2-5 inmates or that Baylor was affiliated with the 2-5 gang, and that Defendant Chavez took reasonable steps to ensure Plaintiff's safety in light of Plaintiff signing the Double Cell Review form. Because the Court finds that Plaintiff has presented evidence to contradict Defendant Chavez's version of events, as described above, Defendant's related request for a grant of qualified immunity also should be denied.

## IV.

## RECOMMENDATION

Based on the foregoing, the Court finds disputed questions of fact that preclude summary judgment on Plaintiff's claim for failure to protect in violation of the Eighth Amendment against Defendant Chavez. Accordingly, **IT IS HEREBY RECOMMENDED** that Defendant Chavez's motion for summary judgment, filed on May 5, 2016, be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within twenty (20) days after being served with these findings and recommendations, any party may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten (10) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **July 18, 2016**                         /s/ Erica P. Grosjean
                                                                     UNITED STATES MAGISTRATE JUDGE