1  Daniel O. Jamison, Esq. (SBN 76880)
   Micah K. Nilsson, Esq. (SBN 250919)
2  Justin L. Thomas, Esq. (SBN 288590)
   **DOWLING AARON INCORPORATED**
3  5080 California Avenue, Suite 340
   Bakersfield, CA  93309
4  Telephone: 661-716-3000
   Email: djamison@dowlingaaron.com; mnilsson@dowlingaaron.com
5  jthomas@dowlingaaron.com

6  Attorney for Plaintiff, COREY MITCHELL

7

8              UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11 COREY MITCHELL                       Case No. 1:13-cv-01324-DAD-EPG

12              Plaintiff,              **MEMORANDUM OF POINTS AND**
                                        **AUTHORITIES IN SUPPORT OF**
13 v.                                   **MOTION FOR ATTORNEY'S FEES**

14 CHAVEZ, ET AL
                                        Judge: Hon. Dale A. Drozd
15              Defendants.             Magistrate Judge: Hon. Erica P. Grosjean
                                        Action Filed:  08/21/2013
16

17

18          On August 18, 2017, after hearing evidence for about three days and then deliberating,

19 the jury returned a unanimous verdict for Plaintiff Corey Mitchell ("Mitchell") and against

20 Defendants Officer Chavez ("Chavez") and Lieutenant Sheldon ("Sheldon"), for violation of

21 Mitchell's civil rights under 42 *U.S.C.* § 1983. The jury awarded damages against the defendants

22 for $50,000.00 each, for a total of $100,000. Mitchell was the prevailing party. Accordingly,

23 Plaintiff seeks reasonable attorneys' fees as a result of the jury verdict and settlement that

24 Officers Sheldon and Chaves violated Plaintiff's Eighth Amendment rights when they failed to

25 protect him from attack by another prisoner.

26 ///

27 ///

28 ///

DOWLING|AARON
INCORPORATED

1

## I.   **FACTS**

2   This case involves an action brought under 42 U.S.C. § 1983, in which a jury ultimately

3   found that Defendants violated Plaintiff Corey Mitchell's Eighth Amendment Constitutional

4   Right to be free of cruel and unusual punishment by  failing to protect him from a serious risk of

5   harm. (Verdict Form of 8/18/2017, Ex. D to Thomas Declaration[1].)

6   On September 5, 2011, Mitchell was stabbed by his cell-mate that Defendants had

7   arranged to be transferred into Mitchell's cell. Plaintiff claimed, and the jury concluded, that

8   Defendants were deliberately indifferent to a substantial risk of harm against Plaintiff, which

9   Defendants knew of but disregarded by failing to take reasonable measures to address the risk.

10   Instead, Defendants ignored Plaintiff's pleas for protection and arranged for a known enemy-

11   gang member to be transferred into Plaintiff's cell.

12   Plaintiff filed a complaint in court on August 21, 2013 naming Chavez, Sheldon and

13   other as Defendants. As Plaintiff initially represented himself, little discovery was done.   In

14   March 2015, Pursuant to 28 U.S. Code § 1915A, the court screened Plaintiff's complaint and

15   dismissed all claims and defendants other than the failure to protect claim against defendants

16   Sheldon and Chavez.

17   Thereafter, the court appointed Daniel O. Jamison, Micah K. Nilsson and Justin L.

18   Thomas, Dowling Aaron Inc., to represent Plaintiff Corey Mitchell in this case, on January 3,

19   2017.   A true and correct copy of the Order of January 3, 2017, Ex E to the Thomas Decl.

20   Counsel were appointed because Mr. Jamison is a member of the pro bona panel of the Court for

21   prisoner cases.

22   On January 20, 2017, the parties filed a stipulation requesting that the March 7, 2017 trial

23   date and deadlines set by a prior scheduling order entered on December 14, 2016 be vacated. In

24   addition, because discovery had been closed by the time the Court appointed counsel for

25   Plaintiff, counsel for Plaintiff moved to reopen discovery. Plaintiff's motion was granted, in part,

26

---

27   [1] The fact the verdict was vacated has no bearing on this motion. (See *Thomas v. City of Tacoma*,
410 F.3d 644, 649 (9th Cir. 2005), [where a verdict was returned by the jury, and the parties
28   subsequently reached a settlement in which the verdict for Plaintiffs was vacated, the court still
stated that verdict was a "clear victory.")

1   and denied, in part. Plaintiff Counsel's requests to subpoena additional prison records, and to

2   depose Defendants was granted.   In preparation for the trial, counsel for Plaintiff spent

3   substantial time conducting the discovery, which included taking the Defendants' depositions

4   and subpoenaing prison records; reviewing thousands of medical and prison records; an on-site

5   conference with Mr. Mitchell; multiple telephonic conferences and written correspondence with

6   Mr. Mitchell; researching the law as it applies to this case; subpoenaing percipient witnesses and

7   preparing pre-trial documents, opening statement, closing argument and witness examination

8   questions. (Thomas Decl. ,¶ 10.)

9       On the date of the continued trial, August 15, 2017, Mr. Nilsson and Mr. Thomas

10   appeared and participated in a full jury trial. Counsel and the Court spent an entire day on pre-

11   trial matters. (Thomas Decl., ¶ 11.) A jury was chosen and trial began on August 16, 2017, and

12   continued until the day of the verdict on August 18, 2017. Mr. Nilsson and Mr. Thomas were

13   present for all days of trial, which included opening statement, witness examinations and closing

14   arguments. (Thomas Decl., ¶ 11, see Minutes of Jury Trial, from August 15, 2017 to August 18,

15   2017, Ex. F-I.)

16       The jury deliberated on the last day of trial for approximately one hour before returning a

17   unanimous verdict in favor of Plaintiff, Mr. Mitchell. See Minutes of Jury Trial of August 18,

18   2017, Ex. I, and Verdict Form, Ex. D. The verdict awarded $100,000 to Mitchell for

19   compensatory damages. The jury also found that the elements for punitive damages existed, and

20   a further trial on the issue of punitive damages was set. Prior to the punitive stage of the trial, the

21   parties settled. Plaintiff's counsel attended a settlement conference on August 23, 2017 and a

22   settlement was reached. The settlement, which was put on the record, included that the Court

23   would retain jurisdiction to enforce the settlement and to determine attorney's fees and costs. In

24   addition to the settlement, the parties entered into a stipulation for dismissal, which stipulated

25   that the Court would retain jurisdiction to enforce the settlement agreement and to decide costs

26   and fees.

27       Plaintiff's attorneys, and paralegal put in a total of 576.5 hours in litigating this case,

28   including the expended time by Mr. Thomas researching and writing this motion and the

DOWLING|AARON
INCORPORATED

1   additional briefing regarding recovering attorney's fees.  Billing Statement, Ex. J, Thomas Decl.,

2   ¶ 13.) At the attorneys' and paralegals' full rate, the total fees for legal services rendered is

3   $160,049.50, including Mr. Thomas' work on this motion and the Court-requested briefing on

4   the appropriateness of attorney's fees. Billing Statement, Ex. J.  When reduced by the attorney

5   fee limits imposed by 42 U.S.C. § 1997e, of a maximum of $198.00 ($132 x 1.5) per hour, those

6   fees are reduced to $120,700.10. (See Page from the Internet Site of the United States Courts

7   "The Defender Service Program," Ex. K (noting the maximum amount paid for Public Defenders

8   in non-capital cases (set under 18 U.S.C. § 3006A) is $132/hour). In addition, Plaintiff Counsel's

9   firm incurred $6,697.54, in costs, which included computer research fees, filing fees, processor

10  fees, travel charges, copying costs and witness fees. (Ex. J.) All of the above costs and fees

11  would customarily be billed to clients in accordance with the firm's practice. (Thomas Decl. ¶

12  13.)

13                  **II.   LEGAL ANALYSIS**

14          **A. PLAINTIFF IS ENTITLED TO FEES UNDER 42 U.S.C. § 1988**

15          A successful Plaintiff who brings suit under 42 U .S.C. § 1983 is entitled to recover

16  reasonable attorneys' fees as the prevailing party. 42 U.S.C. § 1988(b); see also F.R. Civ. Proc.

17  54; L.R. 293. 42 U.S.C. § 1988(b), which provides that "[a] claim for attorney's fees and related

18  nontaxable expenses must be made by motion unless the substantive law requires those fees to be

19  proved at trial as an element of damages." Fed. R. Civ. Proc. 54(d)(2).

20          Additionally, Eastern District of California Local Rule 293 provides:

21      (a) Time for Application. Motions for awards of attorneys' fees to prevailing parties
            pursuant to statute shall be filed not, later than twenty-eight (28) days after entry of

22          final judgment. Such motions are governed by L.R. 230 for notice, opposition, reply,
            and decision. See also Fed. R. Civ. P. 54(d), 58.

23

24      (b) Matters to be Shown. All motions for awards of attorneys' fees pursuant to statute
            shall, at a minimum, include an affidavit showing:

25              (1) that the moving party was a prevailing party, in whole or in part, in the

26                  subject action, and, if the party prevailed only in part, the specific basis on
                    which the moving party claims to be a prevailing party;

27              (2)  that the moving party is eligible to receive an award of attorneys' fees,

28                  and the basis of such eligibility;

(3)  the amount of attorneys' fees sought;

(4) the information pertaining to each of the criteria set forth in ( c ); and

(5) such other matters as are required under the statute under which the fee award is claimed.

(c)  Criteria for Award. In fixing an award of attorneys' fees in those actions in which such an award is appropriate, the Court will consider the following criteria:

(1)  the time and labor required of the attorney(s);

(2)  the novelty and difficulty of the questions presented;

(3)  the skill required to perform the legal service properly;

(4)  the preclusion of other employment by the attorney(s because of the  acceptance of the action;

(5)  the customary fee charged in matters of the type involved;

(6) whether the fee contracted between the attorney and the client is fixed or contingent;

(7) any time limitations imposed by the client or the circumstances;

(8) the amount of money, or the value of the rights involved, and the results obtained;

(9) the experience, reputation, and ability of the attorney(s);

(10) the "undesirability" of the action;

(11) the nature and length of the professional relationship between the attorney and the client;

(12) awards in similar actions; and

(13) such other matters as the Court may deem appropriate under the circumstances.

L.R. 293; see also *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1970) (setting out criteria noted in Local Rule 293).

"Under applicable Ninth Circuit law, a plaintiff "prevails" when he or she enters into a legally enforceable settlement agreement against the defendant: [¶] "[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." The Court explained that "a material alteration of the legal relationship occurs [when] the plaintiff becomes

DOWLING|AARON
INCORPORATED

1   entitled to enforce a judgment, consent decree, or settlement against the defendant." In these

2   situations, the legal relationship is altered because the plaintiff can force the defendant to do

3   something he otherwise would not have to do." *Barrios v. Cal. Interscholastic Fed'n*, 277 F.3d

4   1128, 1134 (9th Cir. 2002) quoting *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1118 (9th Cir.

5   2000).

6       In *Harris v. Marhoefer*, 24 F.3d 16, 19 (1994), the Ninth Circuit Court of Appeal held

7   that a prevailing plaintiff "may recover as part of the award of attorney's fees those out-of-

8   pocket expenses that 'would normally be charged to a fee paying client.'" This is true even if

9   such expenses would not qualify as taxable costs. *Id.*; see *United Steelworkers of America v.*

10  *Phelps Dodge Corp.,* 896 F.2d 403,407 (9th Cir. 1990) (holding that out-of-pocket litigation

11  expenses are reimbursable as part of the attorneys' fee, distinct from the costs already awarded to

12  plaintiffs under other provisions of law).

13      In addition, in a civil rights case brought by a prisoner, attorneys' fees are limited by the

14  Prison Litigation Reform Act of 1995, which provides that the Plaintiff can only recover 150% of

15  the amount of monetary judgment from the defendant and can only collect at an hourly rate of

16  150% of that allowed for attorneys who represent defendants as court appointed defenders. See

17  42 U.S.C. § 1997e.

18      26 42 U.S.C. § 1997e(d) provides:

19          (1)     In any action brought by a prisoner who is confined to any jail, prison, or
20  other correctional facility, in which attorney's fees are authorized under section 1988 of
    this title, such fees shall not be awarded, except to the extent that –

21          (A)     the fee was directly and reasonably incurred in proving an actual violation
22  of the plaintiffs rights protected by a statute pursuant to which a fee may be awarded
    under section 1988 of this title; and

23          (B)

24              (i) the amount of the fee is proportionately related to the court ordered
25      relief for the violation; or

26              (ii) the fee was directly and reasonably incurred in enforcing the relief
        ordered for the violation.

27  / / /

28  / / /

(2)     Whenever a monetary judgment is awarded in an action described in paragraph (1), a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant. If the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant.

(3)     No award of attorney's fees in an action described in paragraph (1) shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of title 18 for payment of court-appointed counsel.

## B.   THE COURT SHOULD AWARD ATTORNEYS' FEES BASED ON THE REASONABLE HOURS EXPENDED BY PLAINTIFF'S LAW FIRM

Awards under section 1988 are done under the "lodestar" method. "The "lodestar" is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate. After making that computation, the district court then assesses whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of the Kerr factors." *Morales v. City of San Rafael*, 96 F.3d 359, 363-364 (9th Cir. 1996). As seen below, the attorneys' fees sought in this case are reasonable, particularly given the outcome obtained and the greatly reduced billing rates imposed by section 42 U.S.C. § 1997e.

### 1. A Lodestar Enhancement is Appropriate.

Pursuant to the PLRA, a district court has the authority to award attorney fees up to 150 percent of the maximum hourly rate established by the Criminal Justice Act, 18 U.S.C. § 3006A. *See* 42 U.S.C. § 1997e(d)(3). The maximum hourly rate under the PLRA is $198 per hour for attorneys and paralegals, which is far below Plaintiffs' counsel's standard rates. Jamison Decl. ¶ 3. A district court can further enhance attorney fees beyond the PLRA's limit in order to reasonably compensate counsel. *See Kelly*, 7 F. Supp. 3d at 1081-84 (granting 2.0 multiplier for lead attorney's time and 1.3 multiplier for second attorney's time); *Ginest v. Bd. of Cty. Comm'rs of Carbon Cty,* 423 F. Supp. 2d 1237, 1241 (D. Wyo. 2006) (granting 25% multiplier); *Skinner v. Uphoff,* 324 F. Supp. 2d 1278, 1287 (D. Wyo. 2004) (granting 25% multiplier). *Balla v. Idaho State Bd. of Corr.*, No. CV-81-1165-S-BLW, 2016 U.S. Dist. LEXIS 188836, at *29 (D. Idaho Feb. 1, 2016) (granting up to a 1.97 multiplier).

In appropriate cases, the district court may adjust the lodestar figure based on the *Kerr* factors that are not subsumed in the initial lodestar calculation. *Morales v. City of San Rafael*, 96

1   F.3d 359, 363-64 (9th Cir. 1996). The *Kerr* factors not subsumed in the initial lodestar

2   calculation are: (1) the customary fee, (2) time limitations imposed by the client or the

3   circumstances, (3) the amount involved and the results obtained, (4) the experience, reputation,

4   and ability of the attorneys, (5) the undesirability of the case, (6) the nature and length of the

5   professional relationship with the client, and (7) awards in similar cases. All of these factors

6   weigh heavily in favor of applying a lodestar enhancement in the present case.

7       **2. The PLRA Fee Cap Is Well Below Counsel's Customary Fees.**

8       An enhancement from the PLRA rate is appropriate because the PLRA rate does not

9   adequately measure Plaintiffs' counsel's true market value. *See Perdue v. Kenny A.,* 559 U.S.

10  542, 555 (2010) (stating "an enhancement may be appropriate where the method used in

11  determining the hourly rate employed in the lodestar calculation does not adequately measure the

12  attorney's true market value"); *see also Skinner,* 324 F. Supp. 2d at 1287 (awarding enhancement

13  "[g]iven the low hourly rate allowed under the PLRA"); *Ginest,* 423 F. Supp. 2d at 1241 (stating

14  "the PLRA fees are exceptionally low" and concluding "an enhancement is permissible to make

15  the fee more fair"). The PLRA rates are well below the market rates of Plaintiffs' attorneys and

16  paralegals. Jamison Decl. ¶ 3. As stated above, the standard hourly rates of Plaintiffs' counsel are

17  typical for regional law firms, and are justified by the education, background, and experience of

18  Plaintiffs' counsel. Jamison Decl. ¶ 3.

19      **3. Plaintiff's Counsel Obtained A Very Favorable Result.**

20      Plaintiff's counsel assisted Plaintiff in achieving an exceptional result in this matter under

21  extreme time pressure and quickly mobilized to litigate the serious allegations alleged in

22  Plaintiff's complaint. Plaintiff's counsel were appointed counsel for Mr. Mitchell in January

23  2017, and prepared for trial set for June 20, 2017. On June 12, 2017, the trial was continued to

24  August 15, 2017. Plaintiff initially only had five months to prepare for trial. Discovery was

25  closed and had to be reopened. Plaintiff's counsel successfully reopened discovery on a limited

26  basis, which was instrumental in obtaining the favorable trial result. Plaintiff's counsel had to

27  review thousands of documents for potential evidence. Because of the limited discovery initially

28  done, and the restrictions placed on the reopened discovery, Plaintiff's counsel had to review the

1:13-cv-01324-DAD-EPG

1   available evidence and determine who might be potential witnesses, how to contact them, and

2   what they might say.  This included many potential witnesses that are incarcerated, which is a far

3   greater challenge that non-incarcerated witnesses.

4        Despite these circumstances, Plaintiffs discovered compelling evidence and presented a

5   compelling case to the jury that supported Plaintiff's claim that his rights were violated.

6   Counsels' lodestar hours do not fully reflect their success because the quality of the work that

7   produced these results is underrepresented in the hourly fee. *Balla, supra, at 33.* Plaintiff

8   obtained success in the form of a $100,000 compensatory verdict, a second punitive trial phase,

9   and ultimately a $160,000 settlement in lieu of proceeding against Defendants for punitive

10  damages. Plaintiff obtained a very favorable result, and his attorneys should recover a fully

11  compensatory fee on the litigation. See *Woods v. Carey*, 722 F.3d 1177, 1183, n.6  (9th Cir. 2013

12  ("The majority of these actions result in low-damage awards for the prisoner, but can affect

13  substantial change in the prison conditions or prisoner treatment…[T]he mean damages for cases

14  won at trial by inmate civil rights plaintiffs was $18,800, and the median was a mere $1,000.")

15      **4. Prisoner Cases Are Undesirable**

16      "[A] 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake

17  the representation of a meritorious civil rights case." *Perdue v. Kenny A.*, 559 U.S. 542, 552

18  (2010). A district court may enhance a fee award when "'payment for attorney's services is

19  contingent upon success and the attorney bears the risk of nonpayment in case of failure.'"

20  *Bernardi v. Yeutter*, 951 F.2d 971, 975 (9th Cir. 1991) (citation omitted). This type of

21  enhancement is appropriate if two prerequisites are met: "'[f]irst, the fee applicant must establish

22  that "without an adjustment for risk the prevailing party 'would have faced substantial

23  difficulties in finding counsel in the local . . . market,'"'" and, "'[s]econd, any enhancement for

24  contingency must reflect "the difference in market treatment of contingent fee cases *as a class,*

25  rather than . . . the 'riskiness' of any particular cases."'" *Id.* (citation omitted; emphasis and

26  second ellipsis in original).

27      In addition to providing a low rate, fee awards are only available under the PLRA to the

28  prevailing party, and counsel generally has to pay all costs and expenses upfront, with no

1:13-cv-01324-DAD-EPG

guarantee of reimbursement. See *Woods v. Carey*, 722 F.3d 1177, 1182 n.5 (9th Cir. 2013) (where the court noted the success rate on prisoners suits is very low).  Plaintiffs' counsel was appointed by the Court to represent Plaintiff on a *pro bono* basis in January 2017.  A contingent fee contract will generally take larger percentages if the matter has to go to trial and a larger percentage will be requested for a successful outcome in more risky types of cases, which as shown above, these cases are.  For those reasons, an enhancement of the PLRA rate is appropriate. See *Kelly v. Wengler*, 7 F. Supp. 3d 1069, 1083 (D. Idaho 2014) (concluding enhancement warranted due to risk in taking contingent civil rights cases and need to give other counsel an incentive to take similar cases).

**C. THE COURT SHOULD AWARD ATTORNEYS' FEES IN THE AMOUNT OF $172,222.29**

As seen in the Billing Statement, attached as Exhibit J to the Thomas Declaration, the Court should award Attorneys' Fees, as set forth in the following table:

| Attorney | Total Hours | Hourly Rate | Total |
|---|---|---|---|
| Justin Thomas | 200.90 | $$225.00 | $50,225.00 |
|  | 194.20 | $250.00 | $43,695.00 |
| Micah Nilsson | 90.10 | $375.00 | $33,787.50 |
|  | 53.80 | $350.00 | $18,830.00 |
| Daniel Jamison | 17.70 | $395.00 | $6,991.50 |
|  | 16.00 | $380.00 | $6,080.00 |
| Paralegal |  |  |  |
| Kay Burnett | 3.8 | $160.00 | $608.00 |
| Total | 576.5 |  | $160,049.50 |
|  |  |  |  |
| Reimbursable Cost | Amount |  |  |
| Costs Documented on Exhibit J. | $6,697.54 |  |  |

/ / /

DOWLING|AARON
I N C O R P O R A T E D
ATTORNEYS AND COUNSELORS AT LAW

1      At Plaintiff's counsel normal billing rate, the total amount of fees billed is $160,049.50.

2 As noted in the last page of Exhibit J, the hours billed have already been reduced to reflect a

3 reasonable rate. When reduced by the limitations imposed by 42 U.S.C. § 1997e, and before

4 applying any loadstar enhancement, Mitchell is entitled to attorneys' fees in the amount of

5 $114,002.60, pursuant to 42 U.S.C. §§ 1988 and 1997e, Fed. R. Civ. P Rule 54, and Local Rule

6 293.

7      The total amount incurred, capped at the hourly maximum of $198.00, for attorney fees

8 and paralegal fees, and reimbursable costs is $120,700.10. This is well under the 150% limit of

9 the verdict imposed by 42 U.S.C. § 1997e. Therefore, the Court should award attorneys' fees in

10 the minimum amount of $120,700.10.  Plaintiff further requests that a lodestar enhancement be

11 applied to the attorneys' fee award. Plaintiff suggests a 2.0 multiplier for Mr. Jamison's time, a

12 1.75 multiplier for Mr. Nilsson's time and a 1.5 multiplier for Mr. Thomas' time. With the

13 multipliers, the total award for fees would be $165,524.75 (Jamison - $19,151.50; Nilsson -

14 $52,619.25; Thomas – $93,754). With costs, the total amount requested is $172,222.29.

15
16 **D. THE CRITERIA OF LOCAL RULE 293 TO AWARD ATTORNEYS FEES ARE MET**

17      The criteria outlined in Local Rule 293(b) are clearly met here.

18 **1. Plaintiff Was The Prevailing Party**

19      The jury returned a unanimous verdict in favor of Plaintiff and awarded a total of

20 $100,000 in compensatory damages, as well as a verdict that Defendants' actions made them

21 liable to Plaintiff for additional punitive damages. Plaintiff clearly was the prevailing party in

22 this matter. After the verdict the parties decided to settle the case, largely in order for Defendants

23 to avoid the punitive damage phase of trial.  Plaintiff was already the prevailing party with the

24 jury verdict awarding him $100,000, and the settlement for $160,000 further demonstrates the

25 favorable outcome Plaintiff received. Since Plaintiff was the prevailing party, Plaintiff's counsel

26 is entitled to reasonable attorneys' fees.

27      Prevailing party status is determined by inquiring whether plaintiff's "actual relief on the

28 merits of [their] claim materially alters the legal relationship between the parties by modifying

DOWLING|AARON
INCORPORATED
ATTORNEYS AND COUNSELORS AT LAW

1   the defendant's behavior in a way that directly benefits the plaintiff." *Richard S. v. Dept. of Dev.*

2   *Services of California*, 317 F.3d 1080, 1087 (9 Cir. 2003); see also *Barrios v. Cal.*

3   *Interscholastic Fed'n*, 277 F.3d 1128, 1134 (9th Cir. 2002), ("Here, the settlement agreement…

4   requires [the defendant] to pay Barrios $ 10,000 in damages. Given that Barrios can enforce the

5   terms of the settlement agreement against the [the defendant], the district court correctly

6   concluded that Barrios was the 'prevailing party' in his civil rights litigation.")

7          Just as in *Barrios* and *Richard S.*, the present settlement agreement substantially and

8   materially alters the legal relationship between the parties, because the Defendants were required

9   to pay Mitchell $160,000 in damages, which they otherwise would not have had to do. To

10  determine whether the relief sought was obtained, courts look at "what the lawsuit originally

11  sought to accomplish and what relief actually was obtained." *Andrew v. Bowen,* 837 F.2d 875,

12  877 (9th Cir. 1988). Here, Mitchell's amended complaint sought damages from the Defendants

13  for failing to protect him – the exact basis of relief obtained from the verdict and ultimate

14  settlement agreement.

15      **2.   Plaintiff Is Eligible To Receive An Award Of Attorneys Fees**

16         As outlined above, Plaintiff meets the statutory criteria for being awarded attorneys' fees

17  as he is the Prevailing Party. Further, although the stipulation for dismissal which retained

18  jurisdiction to enforce the settlement has not yet been ordered, it is still proper and timely for

19  Plaintiff to bring a fee motion. *FAS Techs., Ltd. v. Dainippon Screen Mfg., Co., Ltd.*, No. C 00-

20  01879-CRB, 2001 WL 1159776, at *6 (N.D. Cal. Sept. 21, 2001) (noting opposing party had

21  cited no authority "which requires a party to wait until judgment is actually issued to file and

22  have heard a motion for fees").

23         Plaintiff satisfies 42 U.S.C. § 1997e(A) and (B) because he is the prevailing party as

24  outlined above due to the judicially enforceable settlement, which is the functional equivalent of

25  the entry of a consent decree. See *Watts v. Dep't of Corr.*, No. 1:03-cv-5365 OWW DLB P, 2007

26  U.S. Dist. LEXIS 45812, at *7-9 (E.D. Cal. June 14, 2007). Further, Plaintiff proved an *actual*

27  *violation* by obtaining a unanimous jury verdict. See *Thomas v. City of Tacoma*, 410 F.3d 644,

28  647 n.2 (9th Cir. 2005).

1    In addition, 42 U.S.C. § 1997e(d)(2) does not apply to this motion because there was not

2  ultimately a monetary judgment due to the settlement. 42 U.S.C. § 1997e(d) states:

3        (2)   Whenever a monetary judgment is awarded in an action described in
      paragraph (1), a portion of the judgment (not to exceed 25 percent) shall be applied to
      satisfy the amount of attorney's fees awarded against the defendant. If the award of

4      attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by
      the defendant.

5

6    "[T]he explicit retention of jurisdiction or the court's order specifically approving the

7  terms of the settlement are, for these purposes, the functional equivalent of the entry of a consent

8  decree." *Am. Disability Ass'n v. Chmielarz*, 289 F.3d 1315, 1320 (11th Cir. 2002).   A consent

9  decree is not a monetary judgment. The settlement agreement along with the stipulation of

10  dismissal (the consent decree), if signed by the Court, is not a monetary judgment and would be

11  the necessary judicial imprimatur, for which this fee motion is based.   As 42 U.S.C. § 1997e(d)

12  does not apply, the fee motion should not be limited to 150 percent of the judgment and should

13  not require any portion of the attorneys' fees to be paid from the judgment.

14    The PLRA also requires that some portion of the fees be paid out of plaintiff's recovery.

15  42 U.S.C. § 1997e(d)(2). This provision is also not applicable.   Plaintiff and his attorneys agreed

16  to accept the $198 hourly rate of the PLRA, but did not agree to any other portion of it.   Plaintiff

17  and his attorneys' agreement to accept the $198 hourly rate did not extend to any other portions

18  of this legally inapplicable statute.   No portion of the fee and cost award should come out of

19  Plaintiff's settlement funds and all should be paid directly to Plaintiff's attorneys' by Defendants.

20    Even if 42 U.S.C. § 1997e(d)(2) did apply, the requested amount is less than 150 percent

21  of $160,000. Also, if a portion of the settlement amount was to be applied to satisfy the amount

22  of the attorneys' fees awarded against defendant, it should be limited to 1 percent of the

23  settlement amount. See *Prater v. Sahota*, No. CIV S- 06-1993 KJM GGH, 2012 U.S. Dist.

24  LEXIS 65229, at *8 (E.D. Cal. May 8, 2012) ("The PLRA also requires that some portion of the

25  fees be paid out of plaintiff's judgment. 42 U.S.C. § 1997e(d)(2). Although the Ninth Circuit has

26  not addressed this provision, other courts generally say that the provision does not automatically

27  require a court to apply 25 percent of the judgment to pay the fees. *Boesing v. Spiess*, 540 F.3d

28  886, 891 (8th Cir. 2008) (finding no abuse of discretion when district court applied one percent

DOWLING | AARON
I N C O R P O R A T E D

of the judgment to the fees). In this case, the court determines that one percent of the fees be paid out of plaintiff's judgment.")

### 3. Plaintiff Has Shown The Amount Of Attorneys Fees Sought

As shown above, Plaintiff has documented the attorneys' fees sought, by submitting statements and the declarations.

### 4. Plaintiff's Case And Plaintiff's Attorneys Meet The Criteria Set Forth In Local Rule 293(C)

The time and labor spent by Plaintiff's attorneys is well documented in the Billing statement attached as Exhibit J to the declaration of Justin Thomas in support of this motion. The difficulty of prevailing on a section 1983 case is well known in the legal community, and legal experience and skill were required to take this case to successful verdict, especially without the aid of full discovery or experts on Plaintiff's side. Plaintiff's attorneys did this work after being appointed by the Court, and did it in lieu of other work that they could have performed for paying clients. (Thomas Decl. ¶ 16.) Plaintiff's attorneys obtained a very favorable result on behalf of Plaintiff, in which he recovered a total settlement of $160,000. Prisoner civil rights cases rarely have such a favorable result. In addition, the rights involved in this action, those of the proper protection of prisoners, are important and valuable rights that must be protected by a humane and advanced society. (Thomas Decl. 17.) Awarding attorneys' fees may encourage other attorneys to take cases that advance the protections of similar civil rights. Plaintiff was represented by experienced attorneys. As is set out in Mr. Thomas' Declaration, he has been an attorney for four years and during that time, Mr. Thomas has practiced in litigation.

Micah Nilsson is also an experienced litigator. He was admitted to the State Bar of California in 2007 after having received his Juris Doctorate degree from the University of California, Davis School of Law.   He is a member of the firm's Litigation Department, Managing Shareholder of the firm's Bakersfield office, and has an extensive practice in the area of civil litigation. He has tried numerous cases to verdict. (See Thomas Decl. ¶ 19.)

/ / /

/ / /

/ / /

DOWLING | AARON
INCORPORATED

1

### III.   **CONCLUSION**

2      Plaintiff prevailed by jury verdict and the subsequent settlement in the instant action.

3  The Court should grant Plaintiff's attorneys' fees in the minimum amount of $120,700.10, before

4  a lodestar enhancement is applied.   With the lodestar enhancement, the Court should award

5  attorneys' fee from Defendants in the amount of $172,222.29. Plaintiff asks for the court to order

6  the requested attorneys' fees, supplemented with any additional time required for reply and the

7  time for the hearing, and to be paid to Plaintiff's attorneys no later than May 1, 2018.

8  Dated: January 9, 2018          Respectfully Submitted,

9                     DOWLING AARON INCORPORATED

10

11                 By:  /s/ Justin L. Thomas

12                     Micah K. Nilsson

13                     Justin L. Thomas

                       Attorneys for Plaintiff

14                     COREY MITCHELL

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1:13-cv-01324-DAD-EPG

**PROOF OF SERVICE**

**STATE OF CALIFORNIA**   )
                          )   **SS**
**COUNTY OF KERN**        )

     I am a citizen of the United States and a resident of the County aforesaid; I am over the age of eighteen (18) years and not a party to the within-entitled action.  My business address is Dowling Aaron Incorporated, 5080 California Avenue, Suite 340 Bakersfield, California, 93309. On January 9, 2018, I served the within document(s):

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEY'S FEES**

☒    **BY ELECTRONIC CM/ECF SYSTEM:**  I hereby certify that on January 9, 2018, I electronically filed the following document with the Clerk of the Court by using the CM/ECF system:

| | |
|---|---|
| Gabrielle De Santis Nield | Michael Anthony Terhorst |
| Edgar R. Nield | BEESON TERHORST, LLP |
| NIELD LAW GROUP, APC | 510 Bercut Drive, Suite V |
| Westlake Professional Center | Sacramento, CA 95811-0111 |
| 679 Encinitas Blvd, Suite 201 | **For Defendant Sgt. Sheldon** |
| Encinitas, CA 92024 | |

**For Defendant Chavez**

I further certify that some of the participants in the case are not registered CM/ECF users. On **DATE, 2017,** I have mailed the foregoing documents by first class mail postage pre-paid or have dispatched it to a third party commercial carrier for delivery within three (3) calendar days to the above-named non-CM/ECF participant(s).

☒    **FEDERAL:** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

     I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on January 9, 2018, at Bakersfield, California.

                             */s/ Rhonda Sandidge*
                             Rhonda Sandidge