1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   COREY MITCHELL,                          No.  1:13-cv-01324-DAD-EPG

12              Plaintiff,

13        v.                                   ORDER GRANTING PLAINTIFF'S MOTION
                                               FOR ATTORNEYS' FEES
14   CHAVEZ and SHELDON,
                                               (Doc. No. 194)
15              Defendants.

16

17        Before the court in this civil rights action is plaintiff's motion for an award of attorneys'

18   fees pursuant to 42 U.S.C. § 1988.  The motion was heard by the court on March 6, 2018, with

19   attorney Micah Nilsson appearing on behalf of plaintiff, attorney Edgar Nield appearing on behalf

20   of defendant Chavez, and attorney Michael Terhorst appearing on behalf of defendant Sheldon.

21   For the reasons set forth below, the court will grant plaintiff's motion for attorneys' fees.

22                                    **BACKGROUND**

23        Plaintiff, a state prisoner, initially proceeded *pro se* in this § 1983 action alleging

24   defendants were deliberately indifferent to the risk of harm he suffered when he was housed with

25   a cellmate who stabbed plaintiff shortly after being moved into plaintiff's cell.  The court

26   appointed counsel from its pro bono panel to represent plaintiff in this matter on January 3, 2017.

27   (Doc. No. 73.)  On August 18, 2017, following a four-day trial, a jury found in plaintiff's favor,

28   concluding defendants were deliberately indifferent to the substantial risk of serious harm that

                                            1

plaintiff faced.  (Doc. No. 160.)  The jury awarded him $100,000 in damages.  (*Id.*)  Additionally, the jury concluded that defendants had acted with malice, oppression, and/or reckless disregard of plaintiff's rights, thereby establishing the possibility that defendants were liable for punitive damages.  (*Id.*)  The court directed that the second phase of the trial, concerning the amount of punitive damages, if any, to be awarded would commence on the afternoon of August 23, 2017.  (Doc. No. 158.)  The parties requested that a settlement conference be held on the morning of August 23, 2017.  (Doc. No. 161.)  At the settlement conference, the parties reached a settlement agreement concerning the total amount to be paid to plaintiff in return for his agreement that the jury verdict be vacated and foregoing the punitive damages phase of the trial, but with no agreement as to the award of attorneys' fees.

On December 21, 2017, the court set a briefing schedule for resolving the parties' dispute concerning the payment of attorneys' fees, and plaintiff's motion was filed on January 9, 2018.  (Doc. Nos. 189, 194.)  Defendants filed an opposition on February 16, 2018.  (Doc. No. 204.)  Plaintiff filed a reply on February 27, 2018.  (Doc. No. 205.)

## LEGAL STANDARD

In an action brought pursuant to 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ."  42 U.S.C. § 1988(b).  The Supreme Court has explained the historical underpinnings and purpose of § 1988(b) as follows:

> In *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240 (1975), this Court reaffirmed the "American Rule" that each party in a lawsuit ordinarily shall bear its own attorney's fees unless there is express statutory authorization to the contrary.  In response Congress enacted the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, authorizing the district courts to award a reasonable attorney's fee to prevailing parties in civil rights litigation.  The purpose of § 1988 is to ensure "effective access to the judicial process" for persons with civil rights grievances.  H.R.Rep. No. 94–1558, p. 1 (1976).  Accordingly, a prevailing plaintiff "'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'"  S.Rep. No. 94–1011, p. 4 (1976), U.S. Code Cong. & Admin. News 1976, p. 5912 (quoting *Newman v. Piggie Park Enterprises*, 390 U.S. 400, 402 (1968)).

*Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (parallel citations omitted); *see also Barnard v.*

2

*Theobald*, 721 F.3d 1069, 1077 (9th Cir. 2013) ("'[A] court's discretion to deny fees under § 1988 is very narrow and . . . fee awards should be the rule rather than the exception.'"); *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1124 (9th Cir. 2008) (holding a prevailing plaintiff is "ordinarily entitled to a reasonable attorney's fee"), *overruled on other grounds*, *Arizona v. ASARCO LLC*, 773 F.3d 1050 (9th Cir. 2014); *Sable Commc'ns v. Pac. Tel. & Tel.*, 890 F.2d 184, 193 (9th Cir. 1989) ("Plaintiffs prevailing in a civil rights action should ordinarily receive attorney's fees unless special circumstances would render such an award unjust.").

A prevailing party is one who succeeds on any significant issue in the litigation, resulting in a "material alteration of the legal relationship of the parties." *Texas State Teacher's Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93 (1989). Although there was initially some indication otherwise, the parties here do not ultimately contest whether plaintiff was the prevailing party in this case. Rather, it is the amount of the fee award to which plaintiffs' counsel are entitled that is disputed by defendants.

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437; *see also Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013) ("The prevailing party has the burden of submitting billing records to establish that the number of hours it has requested are reasonable."); *Carson v. Billings Police Dep't*, 470 F.3d 889, 891 (9th Cir. 2006) (same). "The Supreme Court has stated that the lodestar is the 'guiding light' of its fee-shifting jurisprudence, a standard that is the fundamental starting point in determining a reasonable attorney's fee." *Van Skike v. Director, Office of Workers' Compensation Programs*, 557 F.3d 1041, 1048 (9th Cir. 2009) (quoting *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)); *see also Hensley*, 461 U.S. at 433 (describing the lodestar as the "most useful starting point for determining the amount of a reasonable fee"). Accordingly, a district court is required "to calculate an award of attorneys' fees by first calculating the 'lodestar' before departing from it." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 982 (9th Cir. 2008) (quoting *Caudle v. Bristow Optical Co. Inc.*, 224 F.3d 1014, 1028 (9th Cir. 2000)). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a

3

reasonable hourly rate." *Camacho*, 523 F.3d at 978 (quoting *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001)); *see also Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) ("The number of hours to be compensated is calculated by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client."). Applying these standards, "a district court should exclude from the lodestar amount hours that are not reasonably expended because they are 'excessive, redundant, or otherwise unnecessary.'" *Van Gerwen v. Guarantee Mutual Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (quoting *Hensley*, 461 U.S. at 434).

As noted, the lodestar figure is presumptively reasonable. *See Dague*, 505 U.S. at 562 ("We have established a 'strong presumption' that the lodestar represents the 'reasonable' fee[.]"); *Gonzalez*, 729 F.3d at 1202 ("The product of this computation—'the lodestar figure'—is a 'presumptively reasonable' fee under 42 U.S.C. § 1988."). However, "in rare cases, a district court may make upward or downward adjustments to the presumptively reasonable lodestar on the basis of those factors set out in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir. 1975), that have not been subsumed in the lodestar calculation." *Camacho*, 523 F.3d at 982. Those factors to be considered in making any adjustment to the presumptively reasonable lodestar include:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr*, 526 F.2d at 70; *see also Mendez*, 540 F.3d at 1129; *Ballen*, 466 F.3d at 746 ("After making that computation, courts then assess whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of twelve factors."). "The Supreme Court teaches that the degree of success obtained is 'the most critical factor in determining the reasonableness of a fee

/////

4

award.'" *Bravo v. City of Santa Maria*, 810 F.3d 659, 666 (9th Cir. 2016) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)) (internal quotations omitted).

Finally, in applying these legal standards the court is cognizant of the following overarching guidance provided by the Ninth Circuit:

> Lawyers must eat, so they generally won't take cases without a reasonable prospect of getting paid. Congress thus recognized that private enforcement of civil rights legislation relies on the availability of fee awards: "If private citizens are to be able to assert their civil rights, and if those who violate the Nation['s] fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court." S.Rep. No. 94–1011, at 2 (1976), as reprinted in 1976 U.S.C.C.A.N. 5908, 5910. [fn. omitted] At the same time, fee awards are not negotiated at arm's length, so there is a risk of overcompensation. A district court thus awards only the fee that it deems reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L.Ed.2d 40 (1983). The client is free to make up any difference, but few do. As a practical matter, what the district court awards is what the lawyer gets.
>
> In making the award, the district court must strike a balance between granting sufficient fees to attract qualified counsel to civil rights cases, *City of Riverside v. Rivera*, 477 U.S. 561, 579–80, 106 S. Ct. 2686, 91 L.Ed.2d 466 (1986), and avoiding a windfall to counsel, *see Blum v. Stenson*, 465 U.S. 886, 897, 104 S. Ct. 1541, 79 L.Ed.2d 891 (1984) (quoting S.Rep. No. 94–1011, at 6 (1976)). The way to do so is to compensate counsel at the prevailing rate in the community for similar work; no more, no less.

*Moreno*, 534 F.3d at 1111. Below, the court turns to the fee application in this case.

## ANALYSIS

The parties here agree that plaintiff was the prevailing party, and that an award of attorneys' fees under 42 U.S.C. § 1988 is therefore appropriate.[1] Defendants dispute the hourly

---

[1] Defendants argue in a second opposition filed after the hearing on the pending motion that, "should the Court determine that the Prison Litigation Reform Act (PLRA) not apply in this instance, given that the case was ultimately resolved pursuant to a settlement, then the entire request for an award of attorney fees should be denied." (Doc. No. 208 at 5.) Alternatively, defendants contend that if the PLRA does apply, "then the 25% reduction should be applied, and the fee award reduced accordingly." (*Id.*) Defendants cite no authority in support of these confusing assertions and appear to be conflating distinct issues. The PLRA does not provide the legal basis for awarding attorneys' fees in this action. Rather, 42 U.S.C. § 1988 provides for the award of attorneys' fees to the prevailing party in civil rights actions such as this one. The PLRA—codified at 42 U.S.C. § 1997e *et seq.*, *see Woodford v. Ngo*, 548 U.S. 81, 83 (2006)— merely imposes certain restrictions on civil rights actions filed by prisoners. However, not all

5

rate and hours worked that plaintiff's counsel has employed in arriving at the lodestar, argue that no enhancement should be given here, and assert that 25 percent of the settlement amount should be applied under 42 U.S.C. § 1997e(d)(2) to satisfy the attorneys' fees awarded.  (*See* Doc. No. 204 at 4.)  The court will address each of these issues below.

### A.      Reasonable Hourly Rates

Plaintiff maintains that attorneys' fees should be awarded in this case at the rate of the statutory cap set by the Prison Litigation Reform Act ("PLRA")—$198 per hour—for each of the attorneys who worked on the case, because their reasonably hourly rates exceed this amount. (Doc. No. 194-1 at 10–11.)  Plaintiff also believes the rate of $160 per hour for the paralegal who worked on his case should be approved by the court.  Defendants largely agree that the statutory cap is the appropriate hourly rate, though they assert that this cap should fluctuate, with fees being awarded at a rate of $193.50 per hour for the period between December 22, 2016 and May 4, 2017, and $198 per hour from May 5, 2017 onward.  (Doc. No. 204 at 5–6.)  Defendants also assert that plaintiff's attorney Justin Thomas should be compensated at a lower rate, which they suggest should be between $75 and $115 per hour.  (*Id.* at 6.)

Before the court can turn to the effect of the statutory cap here, it must first determine what the reasonable hourly rate would be for each of plaintiff's attorneys.  The first step in calculating the lodestar amount requires the court to "determine a reasonable hourly rate to use for attorneys and paralegals." *Gonzalez*, 729 F.3d at 1205 (citation omitted).  In assessing fee applications, the reasonable hourly rates are calculated according to the prevailing market rates in the relevant legal community.  *Blum*, 465 U.S. at 895; *Gonzalez*, 729 F.3d at 1205; *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) ("We have held that '[i]n determining a reasonable

---

sections of the PLRA apply to every civil rights case filed by a prisoner.  For instance, the section to which defense counsel is apparently referring in mentioning a 25 percent reduction in fees—42 U.S.C. § 1997e(d)(2)—applies only when a monetary judgment has been awarded.  As will be explained below, no monetary judgment was awarded in this case, which was ultimately resolved by the parties' settlement.  Defense counsel do not contest the fact that plaintiff was the prevailing party and is entitled to an award of attorneys' fees under 42 U.S.C. § 1988, nor could they persuasively do so.  To the extent defendants' argument suggests the court must choose to either reduce the attorneys' fees award by 25 percent or refuse to award attorneys' fees at all, it is completely unsupported by any authority.

6

hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.'") (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986)); *Van Skike*, 557 F.3d at 1046; *Carson*, 470 F.3d at 891. It is also the general rule that the "relevant legal community" is the forum district and that the local hourly rates for similar work should normally be employed. *Gonzalez*, 729 F.3d at 1205; *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010); *Gates v. Rowland*, 39 F.3d 1439, 1449 (9th Cir. 1994); *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992). The initial burden is on the applicant to produce satisfactory evidence that the requested rate is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11; *see also Gonzalez*, 729 F.3d at 1206 ("[T]he fee applicant has the burden of producing 'satisfactory evidence' that the rates he requests meet these standards."); *Nadarajah v. Holder*, 569 F.3d 906, 916 (9th Cir. 2009); *Camacho*, 523 F.3d at 978; *L.H.*, 645 F. Supp. 2d at 893 ("Finally, a reasonable rate should reflect not only the market rates, but the skill and experience of the prevailing party's counsel.") Frequently, though not exclusively, these prevailing market rates are determined based upon affidavits submitted not only from the fee applicants' attorneys, but also from other attorneys who can attest to the prevailing market rates in the community. *See Camacho*, 523 F.3d at 980; *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) (noting that both affidavits and "rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate"). In the end, the court must explain its reasoning in arriving at the hourly rate it sets. *See Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1110–11 (9th Cir. 2014).

Here, plaintiff has submitted the declaration of attorney Daniel Jamison in which the declarant states he has practiced law in Fresno for 39 years, mostly in civil litigation, and that his hourly rate of $380 to $395[2] per hour is comparable to and "probably somewhat lower" than what other similarly-experienced Fresno attorneys charge. (Doc. No. 194-2 at ¶ 4.) In addition,

---

[2] It appears from plaintiff's counsel's billing records that their typically charged hourly rates increased over the course of the litigation. (*See* Doc. No. 194-5 at 56.)

plaintiff's counsel, attorney Justin Thomas, declares that his hourly rate during this case was between $225 and $250 per hour, while attorney Micah Nilsson's billable rates were between $350 to $375 per hour. (Doc. No. 194-4 at ¶ 2.) Attorney Thomas was admitted to the California bar in 2013 and therefore has approximately four years' experience, while attorney Nilsson was admitted to the California bar in 2007 and therefore has approximately ten years' experience. (Doc. No. 194-5 at 2, 4.) Finally, the services of Kay Burnett, the firm's paralegal, were typically billed at a rate of $160 per hour during this time period. (*Id.* at 56.) Plaintiffs have come forward with no evidence from other attorneys demonstrating that these are reasonable hourly rates within the Fresno legal community. However, defendants similarly have not provided any evidence concerning the hourly rate for attorneys of similar capabilities and experience in the Fresno market.

Because neither party has submitted declarations addressing the appropriate hourly rates for attorneys in the Fresno Division of the Eastern District of California, the court will look to recent decisions to determine whether the rates requested by plaintiff's counsel are supported. *See United Steelworkers of Am.*, 896 F.2d at 407 ("[R]ate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate."). The court notes that attorney Jamison has previously been awarded an hourly rate of $305 by this court. *See Schultz v. Ichimoto*, No. 1:08-cv-526-OWW-SMS, 2010 WL 3504781, at *7 (E.D. Cal. Sept. 7, 2010). However, this decision was rendered more than seven years ago. During the intervening time, hourly rates have presumably increased both within the Fresno market generally and for attorney Jamison in particular, given the additional experience he now possesses. Neither attorney Thomas nor attorney Nilsson has apparently had the reasonable rate for his services calculated by a judge of this court.

In the past, judges have awarded between $250 and $400 per hour as reasonable hourly rates in the Fresno Division of this court in civil rights cases brought under 42 U.S.C. § 1988. *See Willis v. City of Fresno*, No. 1:09-cv-01766-BAM, 2018 WL 1071184, at *4–5 (E.D. Cal. Feb. 27, 2018) (awarding between $250 and $380 per hour); *Miller v. Schmitz*, No. 1:12-cv-00137-LJO-SAB, 2017 WL 633892, at *3 (E.D. Cal. Feb. 15, 2017) (awarding $400 per hour);

*Gonzalez-Chavez v. City of Bakersfield*, No. 1:12-cv-02053 JLT, 2016 WL 2898132, at *6–7 (E.D. Cal. May 17, 2016) (awarding up to $380 per hour); *Archer v. Gipson*, No. 1:12-cv-00261-LJO-JLT, 2015 WL 9473409, at *13–14 (E.D. Cal. Dec. 28, 2015) (awarding between $295 and $325 per hour).  A more general survey of recent attorneys' fee awards within the Fresno division of this court suggests a wider range, finding that $125 to $455 per hour is reasonable, based on the experience level of counsel.  *See Juarez v. Villafan*, No. 1:16-cv-00688-DAD-SAB, 2017 WL 6629529, at *18–19 (E.D. Cal. Dec. 29, 2017) *findings and recommendations pending* (recommending that the prevailing rate in the Fresno market is $350 to $400 per hour for attorneys with more than twenty years of experience, $250 to $350 per hour for attorneys with less than fifteen years of experience, and $125 to $200 per hour for attorneys with less than two years of experience); *Trujillo v. Singh*, No. 1:16-cv-01640-LJO-EPG, 2017 WL 1831941, at *2 (E.D. Cal. May 8, 2017) (finding $455 per hour for attorneys with eleven to fifteen years' experience and $154 per hour for paralegals to be reasonable rates, but awarding requested rates of $300 and $115 per hour, respectively).  Moreover, the court observes that other judges in the Eastern District of California have found still higher prevailing rates this district for work performed in civil rights cases, ranging between $400 and $550 per hour.  *See Z.F. v. Ripon Unified Sch. Dist.*, No. 2:10–cv–00523–TLN–CKD, 2017 WL 1064679, at *3 (E.D. Cal. Mar. 21, 2017) ("Prevailing hourly rates in the Eastern District of California are in the $350–$550/hour range for experienced attorneys with over 15 years of experience in civil rights and class action litigation."); *Truisson v. County of San Joaquin Dist. Attorney's Office*, No. 2:11-CV-02986 KJM DAD, 2014 WL 5472787, at *5-6 (E.D. Cal. Oct. 28, 2014) (finding an experienced civil rights attorney's $450 per hour rate reasonable in the prevailing community in an employment discrimination action); *Deocampo v. Potts*, No. 2:06–1283 WBS CMK, 2014 WL 4230911, at *4 (E.D. Cal. Aug. 25, 2014) (awarding up to $400 per hour).[3]

---

[3]  While the court recognizes these cases originate in the Sacramento Division of this court, the general rule for awarding attorneys' fee rates is that "the rates of attorneys practicing in the forum *district*" are used.  *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992) (emphasis added).  The ultimate task of the court is to discern the "prevailing market rates in the relevant community."  *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013) (quoting

Here, given that plaintiff's counsel has relatively little experience litigating civil rights cases and since any of the potential rates the court would find appropriate here will exceed the PLRA cap, as discussed below, the court will find rates on the lower end of the spectrum reasonable for plaintiff's counsel: $380 per hour for attorney Jamison; $350 per hour for attorney Nilsson; and $225 per hour for attorney Thomas.[4]  Paralegal Burnett's hourly rate will be reduced to $154 per hour, the highest rate found by judges of this court in the past to be reasonable for paralegals in the Fresno legal community.  *See Perez v. Cate*, 632 F.3d 553, 557–58 (9th Cir. 2011) (holding the PLRA "limits courts to an hourly rate that is 150 percent of the rate established for court-appointed counsel under the Criminal Justice Act and does not set a separate benchmark rate for paralegal fees").

However, as noted above, the PLRA requires that these hourly rates be capped at 150 percent of the rate paid under 18 U.S.C. § 3006A, the Criminal Justice Act, for the payment of court-appointed counsel (the "CJA rate").  42 U.S.C. § 1997e(d)(3); *Kelly*, 822 F.3d at 1100. Plaintiff's counsel has submitted evidence establishing that the Ninth Circuit's CJA rate was raised to $132 per hour on May 5, 2017.  (Doc. No. 194-5 at 59.)  Defendants respond by suggesting that the rate cap should vary based on when the work was performed—specifically,

*Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005)).  This court has located no authority indicating that hourly rates for attorneys in Sacramento may not be used to guide the court's award of such fees in cases originating in the Fresno Division, particularly in specialized fields of litigation such as civil rights cases.  Again, the typical approach looks to the *district* in which the court sits.  *See Gonzalez*, 729 F.3d at 1206 (noting the appropriate rate was "the market rate prevailing in the Central District of California"); *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (using the "Northern District of California" as the relevant legal community); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (same); *Davis v. Mason County*, 927 F.2d 1473, 1488 (9th Cir. 1991) (using the Western District of Washington as the relevant local community), *overruled on other grounds as recognized in Davis v. City & County of San Francisco*, 976 F.2d 1536, 1556 (9th Cir. 1992).  *But see Vega v. Eatherford U.S. LP*, No. 1:14-cv-01790-JLT, 2016 WL 7116731, at *16 (E.D. Cal. Dec. 7, 2016) (concluding that within the Eastern District of California the appropriate forum for determining the lodestar rate is the division of the District in which the case is filed) (quoting *Jadwin v. County of Kern*, 767 F. Supp. 2d 1069, 1129 (E.D. Cal. 2011)).

[4]  As will become clear for reasons explained below, this exercise of determining counsel's appropriate hourly rate for litigating this prisoner civil rights action is in large part an academic one given the provisions of the PLRA.

that work done prior to May 5, 2017 be subject to a cap based upon the prior CJA rate of $129 per hour. Defendants' argument is unpersuasive in this regard.

Attorneys' fee awards are typically set based on rates existing at the time the award is sought, not when the fees were incurred. *See Perdue*, 559 U.S. at 556; *Jenkins*, 491 U.S. at 282 (explaining that, because fee awards in civil rights cases are typically delayed, the calculation is appropriately adjusted by either using the current rate of pay or by starting with a historic rate and then adjusting for the time passed). Most district courts in this circuit to address the issue have held this same reasoning is true in applying the statutory rate cap of the PLRA, and concluded that the cap should be set based upon the current PLRA rate. *See, e.g.*, *Pierce v. County of Orange*, 905 F. Supp. 2d 1017, 1035 (C.D. Cal. 2012) (basing PLRA cap on the rate existing at the time of the ruling on the attorneys' fee motion); *Lira v. Cate*, No. C 00-0905 SI, 2010 WL 727979, at *4 (N.D. Cal. Feb. 26, 2010); *Gomez v. Reinke*, No. CV 91-299-S-LMB, 2008 WL 3200794, at *9 n.5 (D. Idaho Aug. 7, 2008); *Balla v. Idaho Bd. of Corr.*, No. CV891-1165-S-EJL, 2005 WL 3412806, at *4 (D. Idaho Dec. 9, 2005); *Skinner v. Uphoff*, 324 F. Supp. 2d 1278, 1282–83 (D. Wyo. 2004). *But see Batchelder v. Geary*, No. C-71-02017 RMW, 2007 WL 2427989, at *5 (N.D. Cal. Aug. 22, 2007) (suggesting that courts use the rate in effect at the time the fees were incurred).[5] The court is persuaded by the reasoning of the majority position and will employ the current CJA rate, 150 percent of which results in a statutory rate cap of $198 per

/////

/////

/////

/////

---

[5] The court also notes, for instance, that "in determining the prevailing market rate a district court abuses its discretion to the extent it relies on cases decided years before the attorneys actually rendered their services." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 981 (9th Cir. 2008) (citing *Bell v. Clackamas County*, 341 F.3d 858, 869 (9th Cir. 2003) (holding it was an abuse of discretion to apply market rates more than two years before the work was performed)). "The district court's function is to award fees that reflect economic conditions in the district; it is not to 'hold the line' at a particular rate . . . ." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir.2008).

hour to be employed in this case.[6]  Because each attorney's hourly rate exceeds this cap, the

PLRA cap rate will be used in calculating the lodestar amount for each of plaintiff's attorneys.

### B.    Hours Reasonably Expended

As also noted above, the attorney's fee applicant also bears the initial burden of

establishing the appropriate number of hours expended.  *Hensley*, 461 U.S. at 437; *see also*

*Carson*, 470 F.3d at 891; *Jadwin v. County of Kern*, 767 F. Supp. 2d 1069, 1100 (E.D. Cal. 2011)

("The fee applicant bears the burden of documenting the appropriate hours expended in the

litigation and must submit evidence in support of those hours worked.").  The party opposing the

fee application has the burden of rebutting that evidence.  *Camacho*, 523 F.3d at 982; *see also*

*Toussaint*, 826 F.2d at 904; *Jadwin*, 767 F. Supp. 2d at 1100 ("The party opposing the fee

application has a burden of rebuttal that requires submission of evidence to the district court

challenging the accuracy and reasonableness of the hours charged or the facts asserted by the

prevailing party in its submitted affidavits.").  "By and large, the [district] court should defer to

the winning lawyer's professional judgment as to how much time he was required to spend on the

case."  *Chaudhry*, 751 F.3d at 1111 (quoting *Moreno*, 534 F.3d at 1112).  Therefore, any

significant reduction by the court of the number of hours reasonably expended on the case

requires specific explanation.  *Id.* at 1111–12.

In determining the number of hours reasonably expended on litigation, courts are directed

to "exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."

*Gates*, 987 F.2d at 1397 (quoting *Hensley*, 461 U.S. at 433–34).  "The number of hours to be

compensated is calculated by considering whether, in light of the circumstances, the time could

reasonably have been billed to a private client."  *Moreno*, 534 F.3d at 1111.  "Plaintiff's counsel,

of course, is not required to record in great detail how each minute of his time was expended.  But

---

[6]  Defendants also argue that the Judicial Council of the Ninth Circuit has set a lower rate of
compensation for associate counsel appointed under the CJA, and that this rate should be used in
calculating the lodestar for attorney Thomas. (Doc. No. 204 at 6.)  However, plaintiff's counsel
does not seek compensation under the CJA, but rather an award of attorneys' fees under § 1988.
While such fees are subject to the statutory cap imposed by the PLRA, defendants have cited no
authority in support of their suggestion that the PLRA imposes different statutory caps on rates
depending on the attorneys' experience.  This contention is therefore rejected.

at least counsel should identify the general subject matter of his time expenditures." *Hensley*, 461 U.S. at 437 n.12; *Lytle v. Carl*, 382 F.3d 978, 989 (9th Cir. 2004) (reiterating *Hensley* and accepting hours even where "the time descriptions are minimal"). "Plaintiffs are entitled to recover fees for 'every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest.'" *Willis v. City of Fresno*, No. 1:09-cv-01766-BAM, 2014 WL 3563310, at *14 (E.D. Cal. July 17, 2014) (quoting *Moore v. Jas H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982)). The Ninth Circuit has reminded courts that "lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees," because "[t]he payoff is too uncertain." *Moreno*, 534 F.3d at 1112. "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Id.*

The main disagreement between the parties here concerns the appropriate number of hours expended in connection with this litigation. Plaintiff's counsel represent they have spent 576.5 hours working on this case since their appointment as plaintiff's counsel in January 2017. (Doc. No. 194-1 at 10–11.) Defendants object to the number of hours plaintiff's counsel expended on this matter, arguing: (1) plaintiff's counsel have not demonstrated that they kept contemporaneous time records; (2) plaintiff's counsel failed to produce sufficiently detailed time records; (3) some of the billing records provided by plaintiff's counsel are redacted; (4) counsel's records reflect inappropriate "block billing"; (5) billing for any hours expended prior to the court's order appointing counsel is inappropriate; (6) the hours billed for a February 6, 2017 status conference are excessive; (7) the hours billed for plaintiff's February 2017 motion to re-open discovery are excessive; (8) charges related to conferences and meetings amongst plaintiff's attorneys are excessive; (9) the hours billed for the taking of defendants' depositions are excessive; (10) various clerical or secretarial tasks performed by attorneys are inappropriately included in the fee application; (11) several charges related to the jury trial were excessive and/or duplicative; and (12) the hours billed relating to the post-settlement hearing status report and the motion for attorneys' fees are excessive. (Doc. No. 204 at 8–17.) The court will discuss each of defendants' contentions in turn below.

13

### 1. Failure to Keep Contemporaneous Time Records

Defendants point to several cases to support their claim that counsels' failure to keep contemporaneous time records should result in a reduction of the award of attorneys' fees. *See, e.g.*, *Hensley*, 461 U.S. at 438 n.13 (noting with approval the district court's reduction in an attorneys' fee award due to counsel's failure to keep contemporaneous time records); *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989) ("The lack of contemporaneous records does not justify an automatic reduction in the hours claimed, but such hours should be credited only if reasonable under the circumstances and supported by other evidence such as testimony or secondary documentation.") While this argument has support in the law, defendants have simply not established that plaintiff's counsel failed to keep contemporaneous time records here. Indeed, the documentation submitted in support of the fee application reflects billing to the tenth of the hour, is entered by different parties, and frequently includes multiple entries for separate tasks on the same date. (*See, e.g.*, Doc. No. 194-5 at 26–56.) Therefore, it appears that plaintiff's counsel in fact kept contemporaneous records of the time they expended on this case. (*See* Doc. No. 205-1 at ¶ 3.) Defendants' have not established otherwise and their objections on this basis are therefore not well taken.

### 2. Failure to Produce Sufficiently Detailed Time Records

Defendants next suggest that plaintiff's counsel has failed to produce sufficiently detailed time records. (Doc. No. 204 at 8.) In making this argument, defendants do not challenge any particular time entries, but rather plaintiff's counsel's time-keeping as a whole. The authority defendants cite in support of this proposition appropriately notes that the applicant seeking attorneys' fees "[bears] the risk of failing to provide adequate back-up documentation for its fee request." *In re Wash. Public Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1305–06 (9th Cir. 1994). Again, although the court finds this to be a correct statement of law it also concludes that the time-keeping descriptions provided by plaintiff's counsel are, generally speaking, sufficiently detailed to allow meaningful review by the court. *See Hensley*, 461 U.S. at 437 n.12 (noting counsel "is not required to record in great detail how each minute of his time was expended," and need only "identify the general subject matter of his time expenditures"). Many of defendants'

subsequent objections discussed below reiterate this general argument in more detailed contexts in relation to the particular time entries made by plaintiff's counsel. While the court will not reduce the number of hours billed based on general allegations that counsel's records are insufficiently detailed, the court will below consider defendants' arguments in the context of each of their more specific objections.

### 3. Redactions

According to defendants, any attorney time entry that has been subject to redaction should be disallowed in its entirety. (Doc. No. 204 at 8–9.) Plaintiff's counsel represents that they redacted certain entries to protect work product privileges. (Doc. No. 205 at 10.) Courts typically disallow hours where the billing entries are redacted to such an extent that the court cannot discern what the time was spent on, and therefore, cannot determine whether the time was reasonably expended on the litigation. *Lightbourne v. Printroom Inc.*, No. SACV 13-876-JLS (RNBx), 2015 WL 12732457, at *6–7 (C.D. Cal. Dec. 10, 2015); *Vogel v. Tulaphorn*, No. CV 13-464 PSG (PLAx), 2014 WL 12629679, at *9 (C.D. Cal. Jan. 30, 2014); *Kobos v. Schwan's Home Serv., Inc.*, No. No. CV–F–09–856 LJO SKO, 2010 WL 3943609, at *5 (E.D. Cal. Oct. 4, 2010). However, courts regularly include hours in the lodestar calculation where the billing entry is only partially redacted and it can be discerned from the unredacted portion of the entry that billing for the time is reasonable, or where the proponent of the fee request has submitted the records to be reviewed *in camera*.[7] *Democratic Party of Wash. v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004) (noting a court need not reject redacted time entries where the "redactions do not impair the ability of the court to judge whether the work was an appropriate basis for fees"); *Vogel*, 2014

---

[7] Here, plaintiff's counsel made no request for in camera review of the unredacted versions of these records. The burden is on the moving party to present sufficiently detailed time records to justify the awarding of attorneys' fees based on the hours claimed. *Gates*, 987 F.2d at 1397 ("The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked."); *Chalmers*, 796 F.2d at 1210 ("In determining reasonable hours, counsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended."). Because the movant bears this burden, the district court is "neither obligated to explain what type of records should be submitted, nor to request additional information." *In re Wash. Public Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1306 (9th Cir. 1994). Accordingly, the court will not seek nor allow belated submission of further information about what the redacted portions actually reflect.

15

WL 12629679, at *10; *Kirschner v. Blixseth*, No. CV 11-08283-GAF-SP, 2012 WL 12884846, at *3 (C.D. Cal. Dec. 11, 2012).

The billing records submitted by plaintiff's counsel here presents a mixed case. Some entries provide sufficient information for the court to ascertain that the research or analysis was reasonably necessary and related to the litigation. (*See, e.g.*, Doc. No. 194-5 at 32) (billing 0.6 hours for "Review defendant's substitution of counsel and case analysis regarding [REDACTED]," indicating that the analysis concerned an aspect of defendant's substitution of counsel). Other entries do not provide such information. (*See, e.g.*, *id.*) (merely billing 0.5 hours for "Case analysis regarding [REDACTED]"). Moreover, some billing entries reflect complete or nearly complete redactions but also indicate there was "NO CHARGE." (Doc. No. 194-5 at 28.) If the unredacted portion of the time entry provides no information about what the research or analysis may have pertained to, the court cannot determine whether the time was reasonably expended in pursuit of this case. Therefore, time entries redacted in this manner will be disallowed. Hours in which the court can reasonably ascertain what the redacted entry likely pertains to will not be disallowed. Additionally, no subtractions will be made for entries which reflect "NO CHARGE." Applying these principles and based on its review of the redactions in counsel's submitted billing records, the court will deduct 17.7 hours from attorney Nilsson's billed time, 4.6 hours from attorney Jamison's billed time, and 3.7 hours from attorney Thomas's billed time.

### 4.    Block-Billing

Defendants next contend that the documentation provided by plaintiff's counsel reflects "block billing." (Doc. No. 204 at 9–10.) As defendants correctly note, "'[b]lock billing' is 'the time-keeping method by which each lawyer and legal assistant enters the total *daily* time spent working on a case, rather than itemizing the time expended on specific tasks.'" *Welch v. Metro. Life Ins.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007) (emphasis added). Nonetheless, defendants' argument in this regard is unpersuasive. First, plaintiff's counsel's records generally appropriately reflect numerous separate billing entries for the same day, reflecting different tasks. (*See, e.g.*, Doc. No. 194-5 at 33) (identifying six different billed items for March 1, 2017,

including 0.3 hours to finalize a letter to the client, 0.4 hours to contact plaintiff's family members, and 0.3 hours to review client documents, including incident reports). While defendants identify specific instances that they believe are inappropriate block billing, they provide no specific citations to those instances. The court declines to conduct a detailed review of the two dozen pages of individual billing entries to locate the specific items to which defendants might be referring.

It is true that with respect to attorney time expended during the trial of this action and other in-court related proceedings, the billing records submitted are somewhat less precise. (*See, e.g.*, Doc. No. 194-5 at 43) (billing 18.0 hours for "Attend trial; prepare defendant Sheldon's cross-examination outline; prepare defendant Chavez's cross-examination outline"); *id.* at 44 (billing for 11.8 hours spent in trial "including closing arguments, jury instructions and return of verdict; conference with client regarding [REDACTED]"); *id.* at 45 (billing 10.0 hours for "Attend trial and settlement conference"). It is not unreasonable that an attorney in trial, a settlement conference, or another in-court proceeding would not break down in six-minute increments how their time at the courthouse was precisely spent. Block billing warrants a reduction in the number of hours spent on a matter where, because of the manner of billing, the court cannot ascertain whether such hours could "reasonably be billed to a private client." *Gonzalez*, 729 F.3d at 1202. Here, however, the nature of the block billing is quite limited and does not prevent the court from concluding that these hours could be billed to a private client. Therefore, because defendants have not pointed to instances of block billing in which the court cannot meaningfully review the hours spent, no deduction in hours will be imposed based solely on occasional block billing. *Hensley*, 461 U.S. at 437 n.12 (noting plaintiff's counsel "is not required to record in great detail how each minute of his time was expended," and need only "identify the general subject matter of his time expenditures").

### 5.    Charges Prior to Counsel's Appointment

Defendants assert that 1.4 hours plaintiff's counsel billed in December 2016, which was prior to the court's order appointing them as plaintiff's counsel, should be disallowed. (Doc. No. 204 at 11.) The billing sheet indicates this time was spent reviewing case information and other

17

documents in advance of accepting the court appointment, as well as performing legal analysis concerning the "disclosure of [a] non-disqualifying conflict." (Doc. No. 194-5 at 27.) No authority for this deduction has been supplied to the court, and the court observes that its research has shown instances where attorneys' fees are awarded for work that was necessary to undertake litigation, even if that work was not directly performed as part of the case itself or predated the commencement of litigation. *See, e.g.*, *Webb v. Bd. of Educ. of Dyer Cty.*, 471 U.S. 234, 243 (1985) ("Of course, some of the services performed before a lawsuit is formally commenced by the filing of a complaint are performed 'on the litigation.' Most obvious examples are the drafting of the initial pleadings and the work associated with the development of the theory of the case."); *Beltran Rosas v. County of San Bernardino*, 260 F. Supp. 2d 990, 994 (C.D. Cal. 2003) (approving attorneys' fee award that included time spent successfully resolving an underlying criminal action prior to filing a § 1983 claim for malicious prosecution). Reviewing basic information about a case prior to formally accepting representation of a client involved in already ongoing litigation is not surprising, and legal analysis about whether non-disqualifying conflicts must be disclosed is an appropriately billed expense. The court will not reduce the fee award by the modest 1.4 hours of attorney expended on these tasks.

6.     February 6, 2017 Status Conference

According to defendants, plaintiff's time that was billed for the court's February 6, 2017 status conference was excessive. (Doc. No. 204 at 11.) The billing records indicated that attorney Jamison spent 0.2 hours reviewing the court order setting the status conference and 0.2 hours assisting with preparation for the status conference, both of which are notably listed as "NO CHARGE." (Doc. No. 194-5 at 30.) Attorney Jamison also spent 1.9 hours preparing for and strategizing with co-counsel Nilsson and Thomas in preparation for the status conference. (*Id.* at 31.) Attorney Nilsson spent 0.2 hours reviewing the order vacating the trial schedule and setting the status conference, 0.6 hours preparing for the scheduling conference with co-counsel Thomas, and 0.7 hours actually appearing telephonically at the conference. (*Id.* at 30–31.) Finally, attorney Thomas spent 0.6 hours reviewing the orders and e-mails and meeting with his colleagues about the status conference, 1.3 hours preparing the actual status report, and 6.0 hours

(only 3.0 of which were charged) preparing case outlines, legal outlines, and generally preparing for the conference call with the court. (*Id.*) Additionally, 3.5 hours were spent by attorney Thomas reviewing discovery, preparing a discovery plan, preparing for the status conference, and appearing at the conference with the court. These entries, taken together, reflect 11.8 total hours of attorney time spent on the February 6, 2017 status conference.

Defendants believe this amount of time was excessive, because the conference lasted only approximately a half-hour, and the outcome was the granting of a continuance of the conference to allow plaintiff's counsel time to file a motion to re-open discovery. (Doc. No. 204 at 11.) The minute entry on the court's docket do not reflect the length of the February 6, 2017 status conference, though it was undoubtedly short, since the status conference was continued to February 17, 2017, with plaintiff being granted leave to file the motion to re-open discovery during this time. (*See* Doc. No. 89.) The court agrees in part with defendants' objection. Attorney Thomas spent 8.4 hours preparing for this discovery conference. This is more than four times the number of hours billed by attorneys Jamison and Nilsson in preparation for this brief conference. The court will reduce attorney Thomas's time by 3.4 hours, because it finds five hours is a reasonable amount of time to spend preparing for a status conference which requested only a limited re-opening of discovery. The court will additionally deduct the 1.9 hours billed by attorney Jamison relating to the status conferences, since he did not appear at either.[8]

### 7. February 2017 Motion to Reopen Discovery

Defendants next object that the time billed by plaintiff's counsel, which they assert is 25 hours, for the motion to re-open discovery is excessive. (Doc. No. 204 at 11–12.) Counsel's billing records reflect that attorney Thomas spent a total of 16 hours preparing the motion to re-open discovery and researching potential experts, 0.7 hours reviewing the opposition and

---

[8] The court does not suggest that attorney Jamison's billing in this regard was in any way inappropriate. The same as true as to any hours spent by attorneys Nilsson and Thomas. Attorney Jamison is a senior partner and no doubt had valuable insight and advice to share with his less experienced co-counsel. The court merely concludes that the time of three attorneys for status conference preparation and appearance in a case such as this would not be billed to a private client. The same conclusion underlies any other deductions in the hours spent by counsel in this case.

supporting declarations to the motion to reopen discovery, 1.2 hours preparing arguments against the opposition, and 2.1 hours preparing for the hearing on the motion. (Doc. No. 194-5 at 31–32.) Attorney Nilsson spent little time on this motion, 0.5 hours reviewing defendants' opposition. (*Id.* at 32.) Similarly, attorney Jamison merely billed 0.2 hours to review the court's order on the motion. (*Id.*) The court's tabulation is that plaintiff's counsel spent a total of 20.7 hours on this motion, which differs from the total time claimed by defendants. The court will reduce the number of hours awarded to attorney Thomas here. The motion is only six pages in length, and sought only limited discovery in the form of permission to depose the two defendants, designate a gang expert, and seek certain limited prison records. (Doc. No. 90.) Because Thomas billed the initial 16 hours jointly for both researching potential experts and preparing the six-page motion, the court cannot distinguish how much time he spent on each task. Therefore, the court will reduce the billed hours here by eight hours overall. Spending more than four hours preparing this limited motion is unreasonable, as is spending more than four hours locating potential experts prior to any permission from the court to re-open expert discovery. Additionally, the court will reduce the time reasonably billed preparing for the hearing to one hour. Thus, the court concludes that the time attributed to attorney Thomas for these tasks should be reduced by a total of nine hours.[9]

### 8. Conferences Between Counsel

According to defendants, the three attorneys who represented plaintiff presented billing records showing they collectively spent 56.8 hours[10] over the entirety of 2017 in meetings and

---

[9] The court does note that the records submitted by plaintiff's counsel already reflect deductions in the amount of billed time versus the actual attorney time expended. (*See, e.g.*, Doc. No. 194-5 at 32) (reducing attorney Thomas's billed time from 5.1 hours to 3.1 hours). Such reductions are indicative of a generally conscientious approach by plaintiff's counsel to their fee application.

[10] The defendants do not provide a list of the hours they included within this sum, again simply pointing to the billing records generally. The court's calculation of the time arguably attributed by the billing records to conferences between attorneys Jamison, Nilsson, and Thomas in this case is approximately 28 hours—essentially one half the amount of time claimed by defendants. It is unclear why defendants' calculation differs from the court's. It is possible defendants included communications between the parties in this figure, which the court did not. (*See, e.g.*, Doc. No. 194-5 at 35 (billing 0.4 hours for "Telephone call with Attorney Terhorst regarding subpoena for Mr. Baylor's records); *id.* at 37 (billing 1.8 hours for "Telephone call with opposing counsel

20

conferences concerning this case.  (Doc. No. 204 at 12–13.)  Defendants do not object to time spent on any particular meeting or conference, but rather maintain generally that this total amount is excessive.  The court concurs in part.  Private parties would not pay for repeated conferences between senior partners and more junior members of a law firm to essentially provide training and guidance to the lesser-experienced attorneys.  While some conferencing is certainly reasonable, as team members must coordinate their response and develop litigation strategy, the court finds that a reduction of 8.0 hours from those billed by Mr. Thomas is appropriate here.

9.      Billing for Depositions

Defendants next object to attorney Thomas billing for 19.3 hours for preparing for and conducting the depositions of the two defendants, as well as to 0.7 hours billed by attorney Nilsson, who attended part of one deposition but did not conduct any of it.  (Doc. No. 204 at 14.)  Defendants summarily contend that, because the depositions themselves lasted for only a total of 2.6 hours, it was excessive for plaintiff's counsel to spend 19.3 hours preparing for and conducting the depositions.  (*Id.*)  Again, the court agrees in part.

While it may, under some circumstances, be reasonable to spend more time preparing for a deposition than is actually spent conducting it, spending more than seven times the amount of deposition time in preparation appears to be excessive to the undersigned.  Attorney Thomas billed 7.6 hours in one entry for preparing for and attending the depositions of both defendants Sheldon and Chavez, as well as preparing the pretrial statement.  (*See* Doc. No. 194-5 at 36.)  If 2.6 hours of this entry were spent conducting the depositions, an additional eight hours were sufficient time in which for Mr. Thomas to prepare.[11]  The court will therefore reduce the number of hours awarded to Mr. Thomas by 8.7 hours, to reflect a more reasonable estimate of 10.6 hours spent preparing for and conducting two depositions.  Additionally, the court will deduct attorney

_____

regarding exhibit list and CDCR subpoena").)  In any event, given the differences between these calculations and the lack of references to the specific items by defendants, the court cannot accept defendants' representation of the number of hours billed for these activities.

[11]  To the extent Mr. Thomas also worked on the pretrial statement during this time, the court cannot discern how much time was dedicated to that work, because it is block-billed, thus supporting the reduction in this area.

Nilsson's 0.7 hours as unnecessarily duplicative, since he attended one of the depositions but played no role in conducting it.

### 10. Secretarial Tasks

According to defendants, certain billed attorney hours should not be included in the award of attorneys' fees because they are for secretarial tasks. Specifically, defendants point to 0.3 hours for coordinating a site visit for a client interview; 2.3 hours for reviewing discovery deadlines and the case file; 1.1 hours for retrieving prison records for Mule Creek Prison; 0.5 hours for reviewing the location for defendants' deposition; and 1.3 hours for assisting with the preparation of the joint pretrial statement. (Doc. No. 204 at 14–15.)

Courts have found that secretarial tasks should not be compensated in attorneys' fee awards, or at least should not be compensated at the same rate as an attorney. *See, e.g.*, *Semmaterials, L.P. v. Alliance Asphalt, Inc.*, No. CV 05-320-S-LMB, 2007 WL 676675, at *2 (D. Idaho Mar. 1, 2007) ("As a discretionary matter, the Court finds and thus concludes that the time spent on these types of calendaring and document gathering activities are more clerical or secretarial in nature and may not be recovered as part of a reasonable attorneys' fees award."). However, what is considered a secretarial or clerical task is usually construed narrowly, and courts often differ as to what is considered a secretarial task. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989) (observing that many tasks "lie[ ] in a gray area . . . that might appropriately be performed either by an attorney or a paralegal," and distinguishing these from "purely clerical or secretarial work"); *Hopi Tribe v. United States*, 55 Fed. Cl. 81, 99 (2002) (including in clerical work tasks such as "proofreading, assembling, photocopying and mailing exhibits and pleadings"); *Center for Biological Diversity v. Salazar*, No. CV10-2130-PHX-DGC, 2012 WL 5608094, at *4 (D. Ariz. Nov. 15, 2012) (concluding "researching USPS tracking and filing the complaint and other documents" were secretarial activities); *eMove Inc. v. SMD Software Inc.*, No. CV-10-02052-PHX-JRG, 2012 WL 4856276, at *7 (D. Ariz. Oct. 11, 2012) (noting tasks such as "filing and scheduling, calendaring activities, and bates labeling documents" were secretarial tasks, but "proofreading, cite-checking and revising motions" were not); *Robinson v. Padilla*, No. 2:07-cv-1072-GEB-KJM, at *1 (E.D. Cal. Apr. 8, 2008) (holding that

serving documents is a secretarial task); *Semmaterials, L.P.*, 2007 WL 676675, at \*2–3 n.1 (noting that, while time spent calendaring and document gathering was not included in the attorneys' fee award, time spent organizing and adding individuals to spreadsheets was properly included in the attorneys' fee award).

Here, the undersigned concludes that reviewing discovery deadlines, the case file, and the location for defendants' deposition are not clearly secretarial tasks. There are numerous reasons it may have been important that each of these tasks was performed by an attorney. However, the 0.3 hours spent coordinating a site visit and the 1.1 hours spent retrieving prison records are, in the court's view, clerical tasks. Since it is the moving party's burden to demonstrate the hours directly and reasonably incurred in litigating this matter, the court will reduce attorney Thomas's lodestar figure by 1.1 hours, and attorney Nilsson's lodestar figure by 0.3 hours.

### 11. Duplicative Trial Work

Defendants maintain that much of the approximately forty hours spent by attorneys Jamison, Nilsson, and Thomas preparing for the trial of this matter was duplicative and should not be included in the fee award. (Doc. No. 204 at 15–16.) Particularly, defendants attack three areas of work performed by plaintiff's counsel: (1) the fact that attorney Thomas spent two days preparing for the examination of defendants Chavez and Sheldon; (2) the time attorneys Jamison and Nilsson spent reviewing attorney Thomas's proposed witness examinations and opening statement; and (3) the time spent preparing jury instructions.

First, defendants argue that because attorney Thomas spent 11.5 hours one day preparing for the examinations of defendants Chavez and Sheldon, and then spent 9.5 hours the following day engaged in similar tasks, this work was duplicative. The court agrees that, while significant preparation was required for examinations of the two named defendants, this billing is unnecessarily duplicative. Therefore, the court will reduce attorney Thomas's hours with respect to this work by seven hours. Defendants next object to attorney Jamison spending two hours reviewing attorney Thomas's proposed cross-examination, and to attorney Nilsson billing 13.1 hours for reviewing attorney Thomas's opening statement, attending trial, and preparing for cross-examination. While it is common to have more senior attorneys review the work of

associates, the court will reduce the time attributed to these reviews tasks by one hour each. In the court's view, private clients would not be charged two full hours for attorney Jamison to review attorney Thomas's proposed cross examination. Moreover, attorney Nilsson's billing entry prevents the court from discerning precisely how much time he spent reviewing Thomas's opening statement.

Finally, defendants assert that the time spent by plaintiff's counsel on jury instructions was excessive because the billing records do not specifically state whether they included legal research or other analysis. The court will not require plaintiff's counsel to employ such an exacting level of detail in its billing practices to be awarded attorneys' fees. *See Hensley*, 461 U.S. at 437 n.12. In summary, the billed hours will be reduced in this category by 1.0 hour each for both attorney Jamison and attorney Nilsson, and by 7.0 hours for attorney Thomas.

### 12. Attorneys' Fees Dispute ("Fees for Fees")

Finally, defendants argue that the amount of time plaintiff's counsel spent on a status report regarding attorneys' fees—16.2 hours—and the motion for attorneys' fees itself—33.8 hours—is excessive. (Doc. No. 204 at 16–17.) "It's now well established that time spent in preparing fee applications under 42 U.S.C. § 1988 is compensable." *Anderson v. Dir., Office of Workers Comp. Programs*, 91 F.3d 1322, 1325 (9th Cir. 1996); *see also Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986).

Here, counsel's time entries indicate that attorney Thomas spent 43.8 hours, attorney Jamison spent 6.3 hours, and attorney Nilsson spent 1.4 hours on tasks related to the status report and the attorneys' fee motion in this case. (Doc. No. 194-5 at 48–50.) The status report prepared by plaintiff was 10 pages long, and because defendants filed objections to the report, plaintiff also filed a four-page response. (Doc. Nos. 184, 186.) Plaintiff's motion for attorneys' fees was 16 pages in length, with more than 80 pages of exhibits included with the filing. (Doc. No. 194.) Defendants' opposition was 19 pages, with 62 pages worth of exhibits attached. (Doc. No. 204.) Plaintiff filed a 20-page reply with 12 pages of exhibits attached. (Doc. No. 205.)

Defendants have raised many arguments in opposition to plaintiff's attorneys' fee request, many of which the court has found to be unpersuasive. Indeed, prior to the filing of the attorneys'

fee motion, in connection with the status report the court directed to be filed, defendants took the position that plaintiff's counsel was not entitled to *any* fees or costs, because plaintiff was not the prevailing party in this action. (*See* Doc. No. 183 at 2) ("Defendants assert that Plaintiff's counsel are not entitled to any attorney's fees and costs."). Though defendants now appropriately concede plaintiff was indeed the prevailing party, raising such arguments requires opposing counsel to address them, thereby increasing the hours spent on litigating this fee dispute. To the extent defendants now protest that too much time was spent by plaintiff's counsel on their attorneys' fee motion, this is in large part of their own making. Further, the total time spent by plaintiff's counsel on the pending fee application is similar to or significantly smaller than the amount of time approved by courts for that task in other § 1983 cases. *See, e.g.*, *Mays v. Stoble*, No. 3:08-CV-552-EJL, 2012 WL 1302269, at *1–2 (D. Idaho Nov. 9, 2012) (reducing the reasonable amount of hours for the attorneys' fee motion to 43 hours from 94.1 hours); *Jones v. County of Sacramento*, No. CIV S–09–1025 DAD, 2011 WL 3584332, at *21 (E.D. Cal. Aug. 12, 2011) (reducing by half the fees awarded for an attorneys' fee motion on which counsel spent 153 hours); *Beecham v. City of West Sacramento*, No. Civ. S–07–1115 JAM EFB, 2009 WL 3824793, at *6–7 (E.D. Cal. Nov. 16, 2009) (reducing by half the fees awarded for an attorneys' fee motion on which counsel spent 175 hours).

That said, the court will reduce the 1.5 hours attorney Jamison spent preparing evidence for the attorneys' fee motion. (*See* Doc. No. 194-5 at 50.) Attorney Jamison submitted a two-page declaration and his curriculum vitae in support of the motion for attorneys' fees. (Doc. Nos. 194-2, 194-3.) Since attorney Jamison's CV indicates it is "Current as of 8/30/17," and this fee petition was filed in January 2018, the court surmises that he did not update his CV in connection with this fee motion and the court finds that 1.5 hours spent on the two-page declaration he submitted is perhaps a bit excessive. Accordingly, the court will subtract 1.0 hour. Additionally, the billing records indicate that attorney Jamison spent 2.7 hours "[a]ssist[ing] with preparation of papers in support of motion for attorney fees." (Doc. No. 194-5 at 50.) The court surmises that

/////

/////

this entry reflects time spent reviewing the motion attorney Thomas had drafted.[12]  However, none of the other exhibits submitted with the motion for attorneys' fees would have required any substantive legal work to compile.  Accordingly, the court will deduct an additional 2.2 hours from attorney Jamison's billed time, for a total reduction to his time attributed to this category of 3.2 hours.

13.    Total Reasonable Hours

The court will now summarize the result of the analysis set forth above.  The court will deduct 19.7 hours from attorney Nilsson's billed time, 10.7 hours from attorney Jamison's billed time, and 40.9 hours from attorney Thomas's billed time.  Therefore, the court finds the reasonable hours expended on this action by plaintiff's counsel to be 23.0 hours by attorney Jamison, 124.2 hours by attorney Nilsson, and 354.2 hours by attorney Thomas.  (*See* Doc. No. 194-1 at 10.).  Paralegal Burnett expended 3.8 hours on this action, which defendants do not dispute.  (*Id.*)  Given the applicable statutory rate cap, the PLRA rate for each of plaintiff's attorneys is $198 per hour, and paralegal Burnett's hourly rate is set at $154 per hour.  Therefore, the lodestar total for attorney Jamison is $4,554.00, for attorney Nilsson is $24,591.60, and for attorney Thomas is $70,131.60, while the lodestar total for paralegal Burnett is $585.20.  Accordingly, the total lodestar amount is $99,862.40.

**C.     Lodestar Multiplier**

Once a lodestar figure has been arrived at, there is a "strong presumption" that the figure is sufficient compensation.  *Perdue*, 559 U.S. at 546.  However, that figure may be enhanced in exceptional cases based on certain enumerated factors, so long as those factors are not already subsumed within the lodestar calculation.  *Id.*  These factors, known as *Kerr* factors from the case *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), are as follows:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the

---

[12]  To the extent it reflects time spent preparing his declaration and CV, it would be duplicative.

26

results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Morales v. City of San Rafael*, 96 F.3d 359, 363 n.8 (9th Cir. 1996); *see also Klein v. City of Laguna Beach*, 810 F.3d 693, 699 & n.5 (9th Cir 2016).  Any lodestar enhancement must be demonstrated by the fee applicant, and must be based on "specific evidence" supporting that award.  *Perdue*, 559 U.S. at 553.  The Ninth Circuit has held that the following factors are presumptively subsumed in the lodestar calculation:  "(1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, . . . (4) the results obtained, and (5) the contingent nature of the fee agreement."  *Morales*, 96 F.3d at 364 n.9; *see also Cunningham v. County of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988).  Additionally, courts may enhance the lodestar if it is insufficient to secure competent counsel, and may enhance it "by an amount reasonably calculated to induce competent lawyers in the relevant community to take such cases."  *Kelly*, 822 F.3d at 1104.

Plaintiff's attorneys seek an enhancement to the lodestar here for three reasons:  (1) the PLRA fee cap is well below the customary hourly rate for their services; (2) the results obtained for plaintiff were very favorable; and (3) the lack of incentive for competent counsel to undertake representation of prisoners in civil rights actions such as this one.  (Doc. No. 194-1 at 7–10.)  Defendants oppose this enhancement to the lodestar predominantly on the grounds that plaintiff's counsel had sufficient time to prepare for trial and were not operating under the same "extreme time pressure" as the counsel in the *Kelly* case.  *See* 822 F.3d at 1103.  (Doc. No. 204 at 6–7.)  However, the court notes that plaintiff's counsel do not seek an enhancement to the lodestar due to time constraints.

1. The Customary Fee

As explained at length above, the hourly rate customarily charged by each of plaintiff's attorneys significantly exceeds the PLRA cap that was used in calculating the lodestar.  Therefore, the customary fee charged by plaintiff's counsel (and indeed, the general Fresno legal community) could arguably provide a basis for enhancing the fee award in this case.  *See Kelly v.*

27

*Wengler*, 7 F. Supp. 3d 1069, 1082–83 (D. Idaho 2014) (approving a multiplier in part because the PLRA cap undervalued plaintiff's counsel, and observing, "[w]here a fee award is multiplied upward to account for factors not subsumed in the lodestar calculation, it is still 'based on' the initial lodestar fee rate; the fee is increased from that base point to ensure reasonable compensation of counsel in those very narrow circumstances when the lodestar undervalues counsel."); *see also Cole v. Collier*, No. 4:14–cv–1698, 2018 WL 2766028, at *15 (S.D. Texas June 8, 2018) (noting that even if PLRA caps were applied, the court would award a modifier and find enhanced attorneys' fee reasonable); *Bown v. Reinke*, No. 1:12-cv-262-BLW, 2016 WL 2930904, at *2 (D. Idaho May 19, 2016) (awarding a multiplier in part because the PLRA cap "significantly undervalue[s] the work of [plaintiff's] counsel"); *Ginest v. Bd. of Cty. Comm'rs of Carbon County*, 423 F. Supp. 2d 1237, 1241 (D. Wyo. 2006) (finding that "the PLRA fees are exceptionally low and an enhancement is permissible to make the fee more fair").

### 2. The Results Obtained

Both the Supreme Court and the Ninth Circuit have held that the results obtained in a case is a factor typically subsumed within the lodestar figure, and therefore should not generally be relied upon as a basis for enhancing the attorneys' fees. *See Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 n.2 (9th Cir. 2000) ("[T]he Supreme Court has held that . . . [the] results obtained are ordinarily subsumed in the lodestar determination and in most cases should not be considered in the multiplier step."); *Morales*, 96 F.3d at 364 n.9; *Gates*, 987 F.2d at 1404 (noting that while the Supreme Court had suggested in *Hensley*, 461 U.S. at 434, that the results obtained could factor into awarding an enhancement, that rule had since been modified); *E.E.O.C. v. Harris Farms. Inc.*, No. CIV F 02-6199 AWI LJO, 2006 WL 1028755, at *3 (E.D. Cal. Mar. 1, 2006).

Here, plaintiff's counsel undoubtedly obtained an excellent result for their client. The plaintiff was awarded $160,000 in a settlement following a jury award of $100,000 in compensatory damages with a finding that defendants were potentially liable for punitive damages as well. By contrast, prisoner civil rights cases which are successful at trial typically award mean damages of $18,800 and median damages of $1,000. *See Woods v. Carey*, 722 F.3d

1177, 1182 n.6 (9th Cir. 2013) (quoting Margo Schlanger, *Inmate Litigation*, 116 Harv. L. Rev. 1555, 1603 (2003)).  However, plaintiff's counsel have not provided any basis for excluding this case from the normal assumption that this favorable result is factored into the hourly rates for counsel found to be appropriate by the court.  Therefore, consideration of this factor does not support enhancing the fee award.

3.  <u>Need for Capable Attorneys to Undertake Representation in Prisoner Cases</u>

The lack of capable counsel willing to undertake representation of prisoners such as plaintiff in actions such as this one typically supports a fee enhancement.  The Supreme Court has found that one of the rules governing fee-shifting statutes is that "a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue*, 559 U.S. at 552.

Success in civil rights actions filed by prisoners is rare.  *See Woods*, 722 F.3d at 1182 n.5 (noting that out of 55,376 prisoner suits ending in 2000, only 10.5 percent went to trial and of those, only 77 resulted in victories for plaintiff, indicating a success rate of 0.1 percent of the total suits filed and 13 percent of those that went to trial).  Moreover, courts may award little to no attorneys' fees in civil rights actions where the plaintiff does not recoup significant damages. *Farrar*, 506 U.S. at 114–15 ("Having considered the amount and nature of damages awarded, the court may lawfully award low fees or no fees . . . .")  This, again, is often the case in civil rights suits filed by prisoners. *Woods*, 722 F.3d at 1182 n.6 (noting mean damages awarded in such cases of $18,800 and median damages of $1,000).  Finally, even in cases where diligent attorneys achieve a significant victory for their client, and as made clear by the discussion above in this case, the PLRA caps the hourly rate that may be considered at the lodestar stage of the calculation, thereby resulting in counsel receiving less than their standard hourly rate.  This makes it unlikely that competent counsel will take these cases, since fees can only be recouped in the unlikely event that the case is ultimately successful and, even then, will be awarded at a rate that is significantly below market.

/////

/////

This reality has lead the Ninth Circuit to recognize the following:

> Improving the quality of prisoner suits requires that plaintiffs with meritorious civil rights cases be able to secure competent counsel. When the lodestar figure based on the PLRA rate is insufficient to induce competent attorneys to accept appointment in meritorious civil rights cases, it is by definition not a reasonable fee. *See Perdue*, 559 U.S. at 552, 130 S. Ct. 1662. When a plaintiff demonstrates with specific evidence that no competent attorney is willing to take on a meritorious civil rights case because of insufficient fees, the district court furthers the PLRA's purpose by enhancing the lodestar figure by an amount reasonably calculated to induce competent lawyers in the relevant community to take such cases. *See id*. at 554, 130 S. Ct. 1662 (a fee enhancement is appropriate when there is "specific evidence that the lodestar fee would not have been adequate to attract competent counsel" (citation and internal quotation marks omitted)).

*Kelly*, 822 F.3d at 1104, 1105 (upholding a lodestar enhancement of 2.0 and 1.3 in a civil rights class action brought on behalf of state prisoners). Consistent with these recognized principles, courts in several instances have awarded lodestar multipliers in actions brought on behalf of prisoners or arrestees based upon the difficulty of attracting capable counsel to undertake them. *See Gomez v. Gates*, 804 F. Supp. 69, 76 (C.D. Cal. 1992) (awarding a 1.75 multiplier given the "undesirable nature of this case"); *Garmong v. Montgomery County*, 668 F. Supp. 1000, 1010 (S.D. Tex. 1987) (awarding an enhancement in case challenging a popular elected official's policy of using unlawful force against prisoners, characterizing the case "highly undesirable"); *White v. City of Richmond*, 559 F. Supp. 127, 134 (N.D. Cal. 1982) (awarding a multiplier of 1.5 where a case was not "undesirable . . . in the political sense of the word," but where it was "difficult to find counsel" for other reasons) (internal quotations omitted). *Compare Cooper v. Hopkins*, 945 F. Supp. 940, 948 (S.D. Miss. 1995) (denying multiplier on this basis where the plaintiff's attorney in question had only participated in the case "at the appellate level rather than the trial level where public scrutiny is more pronounced").

### 4.    No Lodestar Multiplier is Appropriate Here

Considering all the factors addressed above, the court finds that there simply is insufficient evidence demonstrating that this case is exceptional and warrants application of a multiplier to the lodestar amount. While the PLRA caps plaintiff's attorneys' fees at a rate below the prevailing rate plaintiff's attorneys typically charge, the court notes that none of these

attorneys typically litigates prisoner civil rights actions[13], and no evidence has been presented indicating that any attorneys in the Fresno market who may litigate such cases charge rates in them above the PLRA rate cap.  The court is reluctant to hold that, without more, representing a prisoner in a civil rights suit warrants a multiplier.[14]  Here, plaintiff's counsel have not claimed any particular concerns about having represented plaintiff in this action, or that they fear reputational injury.  Nor do they represent that any other factors, such as time limitations, the preclusion of other employment, the experience or reputation of the attorneys, or the nature and length of the relationship with the client, should lead the court to award a multiplier.[15]

### D.     Applicability of 42 U.S.C. § 1997e(d)(2)

Finally, defendants argue that they are entitled to a set-off under 42 U.S.C. § 1997e(d)(2). (Doc. No. 204 at 17.)  That provision states:

> Whenever a monetary judgment is awarded in an action described in paragraph (1), a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant.

42 U.S.C. § 1997e(d)(2).  However, as plaintiff's counsel correctly points out, no monetary

---

[13]  "We have held that '[i]n determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community *for similar work performed by attorneys of comparable skill, experience, and reputation.*'"  *Ingram*, 647 F.3d at 928 (quoting *Chalmers*, 796 F.2d at 1210–11) (emphasis added).

[14]  The court is cognizant that many law firms accept pro bono appointments, in part, because trial experience for their younger attorneys is hard to come by in modern litigation practice.  *See Martel v. County of Los Angeles*, 56 F.3d 993, 1003 (9th Cir. 1995) ("Most cases settle after the lawyers find out the facts, and determine that their estimates of value overlap.").  Pro bono appointments provide an opportunity for young lawyers to gain that experience.  However, in examining the legislative history of 42 U.S.C. § 1988, the Supreme Court has held that "Congress did not intend the calculation of fee awards to vary depending on whether plaintiff was represented by private counsel or by a nonprofit legal services organization."  *Blum v. Stenson*, 465 U.S. 886, 895 (1984).  In the same case, the Supreme Court specifically noted, "in the rare case in which an upward adjustment to the presumptively reasonable fee of rate times hours is appropriate, we draw no distinction between profit and nonprofit law offices."  *Id.* at 901 n.18. Therefore, the court's decision to deny a lodestar modifier does not depend on the pro bono nature of the representation provided in this case.

[15]  Again, as addressed above, the lodestar amount is the presumptively reasonable fee and takes into account success on the merits.

judgment was entered in this case.  Instead, the parties settled this case during a court-supervised settlement conference.  Pursuant to that settlement agreement the parties jointly agreed to set aside the jury verdict in exchange for a payment of $160,000 from defendants to plaintiff.  (Doc. Nos. 167, 168.)  It goes almost without saying that settlement agreements are not judgments of the court.  This is why, for instance, the court must specifically retain jurisdiction to enforce settlement agreements, but need not do so for judgments over which it always retains the jurisdiction to enforce.  *Compare Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381–82 (1994) (holding a federal court has no inherent right to retain jurisdiction over a private settlement agreement, unless it does so explicitly or embodies the settlement terms in its order) *with Hook v. Ariz. Dep't of Corr.*, 972 F.2d 1012, 1014 (9th Cir. 1992) ("A district court retains jurisdiction to enforce its judgments . . .."); *TI Beverage Grp. Ltd. v. S.C. Cramele Recas SA*, No. LA CV 06-07793-VBF, 2014 WL 1795042, at *5 (C.D. Cal. Apr. 1, 2014) ("A district court always has jurisdiction to enforce its judgments . . ..") (quoting *Guilford v. City of Philadelphia*, No. CIV. A. 94-5560, 1995 WL 521761, at *4 (E.D. Pa. Aug. 31, 1995)).  Defendants' citation to the decision in *Farella v. Hockaday*, 304 F. Supp. 2d 1076 (C.D. Ill. 2004) is not to the contrary.  *Farella* involved a jury verdict that was rendered in the plaintiff's favor which was not set aside pursuant to a settlement agreement.

Accordingly, the court concludes that § 1997e(d)(2) is inapplicable on its face and defendants are not entitled to any set off with respect to the attorney's fees awarded.

## CONCLUSION

For all the reasons set forth above:

1. Plaintiff's motion for attorney's fees (Doc. No. 194) is granted;

2. Defendants are directed to pay $99,862.40 in attorneys' fees to plaintiff's counsel;

/////

/////

/////

/////

/////

3. The court will retain jurisdiction over the case to enforce the parties' settlement agreement; and

4. The Clerk of the Court is directed to close the case.

IT IS SO ORDERED.

Dated: __**June 29, 2018**__

_____
UNITED STATES DISTRICT JUDGE